The Madison Avenue Baptist Church, Appellant, *v.* The Baptist Church in Oliver Street, etc., Respondent.

Under the act to provide for the incorporation of religious societies (chap. 60, Laws of 1813, 3 Edmonds, Stat. 687), the trustees of such a corporation are authorized to act in its behalf, in taking the steps required by section 11, for the purpose of effecting a sale of its real estate, and their acts are binding upon it, although it does not appear they had the express sanction or authority of a majority of the corporation.

Religious corporations have no common-law rights to alienate their real estate, and to constitute a sale within the meaning of section 11; there must be a valuable consideration inuring to the corporation as such. Therefore, an order of the Supreme Court, authorizing a conveyance founded upon a petition, showing the only consideration for the contemplated transfer, to be a benefit to the individual corporators, is without jurisdiction, and a deed executed in pursuance thereof is void.

(Argued June 1st, 1871; decided September 5th, 1871.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, affirming judgment entered upon decision of the court in favor of defendant.

This is an action of ejectment, brought to recover the possession of certain real estate, situate upon Madison avenue in the city of New York, conveyed to the defendant by plaintiff, by deed dated October 21, 1862, which deed was executed in pursuance of orders of the Supreme Court, dated October 17th and 20th, 1862. The facts disclosed by the petition, upon which said orders were granted, and which have a bearing upon the questions determined, are set forth in the opinion.

*George F. Comstock & C. C. Landell,* for the appellant. That an action of ejectment is the proper remedy. (*Wheaton* v. *Gates,* 18 N. Y., 395; *Deming* v. *Corwin,* 11 Wend., 647; *Rogers* v. *Dill,* 6 Hill, 415; 15 Wend., 448, per Bronson, J.; 20 Wend., 378, 379, per Walworth, C.; 20 Wend., 384–386, per Verplanck, Sen.; 8 How., U. S., 536–544, per Wayne, J.; 8 How., U. S., 552–558, per Nelson, J.) The real estate

of religious corporations inalienable, save under the provisions of section 11. (See *De Ruyter* v. *St. Peter's Church*, 3 Comst., 238, 240–241; Willard's Eq., Jur., pp. 734, 735; 2 Kent's Com., 281; See *De Ruyter* v. *St. Peter's Church*, 3 Barb. Ch., 119, 122; *Bogardus* v. *Trinity Church*, 4 Paige, 178, 198; act of June 19, 1703, Smith & Livingston's Laws of N. Y., p. 52, ch. 128.) The conveyance not authorized by section 11. (*Robertson* v. *Bullions*, 1 Kern., 243; *Williamson* v. *Berry*, 8 How., U. S., 495, 544; *Wyatt* v. *Benson*, 23 Barb., 327; *Stow* v. *Wise*, 7 Conn., 19; *Wiggin* v. *Free Will Baptist Society*, 8 Met., 301.) Religious corporations can only convey, for purposes for the benefit of the society. (*Wheaton* v. *Gates*, 18 N. Y., 395, 403.)

*William R. Martin & J. Emott*, for the respondent. That plaintiff had the power to convey, inherent in themselves as a corporation. (*Mayor, etc., of Colchester* v. *Lowton*, 1 Ves. & Bea., p. 244, 1813; *Dutch Church in Garden Street* v. *Mott*, 7 Paige, p. 83; 4 Kent, p. 5, § 1; 2 Kent, 281, § 4; *Barry* v. *Mercht. Ex. Co.*, 1 Sand. Chy., p. 293; *Robertson* v. *Bullions*, 1 Kern., p. 251; *Baptist Church* v. *Wetherell*, 3 Paige, 300; *The Dutch Church* v. *Mott*, 7 Paige, 84; *Bowen* v. *Irish Presb. Soc.*, 6 Bos., 267.) Section 11 was fully complied with. (*Bowen* v. *Irish Presb. Church.*, 6 Bosworth, p. 266, 267; *Brick Presb. Church*, 3 Edwards' Chy., 155; *Demarest* v. *Ray*, 29 Barbour, 563.) No objection to order, that it does not sufficiently direct application of proceeds. (*De Ruyter* v. *St. Peter's Church*, 3 Coms., 238; 3 Barb. Chy., 120; *Wheaton* v. *Gates*, 18 N. Y., 402.) Plaintiff has no right to claim the transaction to be *ultra vires*. (*Bissell* v. *Mich. So. R. R. Co.*, 22 N. Y., 258; *Parish* v. *Wheeler*, 22 N. Y., 494.) Although the transaction amounted to a surrender by plaintiff, that would not invalidate it. (*Slee* v. *Bloom*, 19 J. R., 474; *Trustees Vernon* v. *Hills*, 6 Cowen, 26; 1 Bouvier Institutes, § 104, subd., 1; *Smith* v. *Smith*, 3 Dess. Eq. R., S. C., 571, 575; *Woodbridge* v. *Allens*, 13 A. & Ellis, 269.) The transaction cannot now

be questioned, as it was consummated, and the parties cannot be reinstated. (*Parish* v. *Wheeler*, 22 N. Y., 494; *Bissell* v. *M. S. & N. I. R. R. Co.*, 22 N. Y., 258; *E. C. R. Co.* v. *Hawks*, 5 H. L. C., 331; 39 L. J. Exch., 217; 4 Hurl. & C., 409; 39 L. J. Exch., 217; L. R., 4 H. L. Cases, 628; 22 N. Y., 274; 2 J. & H., 408; *Ramsey* v. *People*, 19 N. Y., 41; *Mount* v. *Morton*, 20 Barb., 123; *Baker* v. *Lorillard*, 4 Coms., 257; *Tilton* v. *Nelson*, 27 Barb., 595–608.) The orders of the Supreme Court cannot be impeached collaterally. (18 N. Y., 397; 15 Wend., 436; 20 Wend., 378; 7 John. Ch., 182; 3 Seld., 352; 15 N. Y., 617; *Duchess of Kingston's case*, 2 S. Leading Cases, Am. ed., 668–693; *Càstrique* v. *Imrie*, *House of Lords*, 1870; 39 L. J., C. P., 350; L. R., 4 H. L. Cases, 414.) The application by the trustees, was the act of the corporation and was sufficient. (In *Barnes* v. *Perine*, 9 Barb., p. 206; S. C. 2 Kern., p. 25; *Trustees First Bap. Soc. Syracuse* v. *Robinson*, 21 N. Y., p. 237; *The People* v *Runkle*, 9 Johnson, p. 157; *Bayley* v. *Onondaga Ins. Co.*, 6 Hill, 476; 6 Cow., 27; 14 Conn., 594; 20 How., 325; *Lee* v. *M. E. C. Fort Edward*, 52 Barb., 116; *St. Ann's Church*, 23 How., 285; *Wyatt* v. *Benson*, 23 Barb., 327.) The conveyance was authorized by the corporators. (*People* v. *Van Slyke*, 4 Cow., 297; *People* v. *Ferguson*, 8 Cow., 102; *People* v. *Vail*, 20 Wen., 12; 7 Cow., 402, 409, 410; *Field* v. *Field*, 9 Wend., 394, 403 and cases cited; *Rex* v. *Varlo*, 1 Cowp., 248; 1 Kyd on Corps., 308, 400, 424; 1 Black. Com., 478 - Gibson, Ch. J., in *St. Mary's Church*, 7 Sergt. & Rawle, 543; Angel & Ames on Corp., 3d ed., ch. 14, pp. 452, 460, § 8, 8th ed., § 501; *Rex* v. *Bellringer*, 4 T. R., 810; argt., p. 817; opin., 822, 823; *Damon* v. *Granby*, 2 Pick R., 345, 355; *Wiggin* v. *Freewill Baptist Ch.*, 8 Met., 301, 312; *Stow* v. *Wyse*, 7 Conn. R., 214, 219; *Smyth* v. *Dailey*, 2 H. L. Cases, 803; *King* v. *Bower*, 1 Barn. & Cress., 492; *Rex* v. *Miller*, 6 T. R., 268; *Rex* v. *Morris*, 4 East, 17.)

Grover, J. The determination of this case, depends upon the validity of the deed executed by the plaintiff to the defend-

ant, purporting to convey, by the former to the latter, the title to the property, the possession of which is sought to be recovered by the plaintiff in this action. The property consists of five lots of land, situate upon Madison avenue and Thirty-first street, in the city of New York, upon which, at the time of the giving of the deed, there was situated a church edifice, which, prior thereto, had been occupied by the plaintiff for religious worship. The validity of the deed, depends upon the jurisdiction of the Supreme Court, to make the order, directing a conveyance of the property by the plaintiff to the defendant. If the court had jurisdiction to make that order, the defendant acquired title to the property in question, in fee, under the deed based thereon, given by the plaintiff to it. It is claimed, upon the part of the plaintiff, that the court acquired no jurisdiction of the subject-matter, and had no power to make the order, for the reason, that the petition of the trustees of the plaintiff, presented to the court for such order, was not authorized by a majority of its corporators, nor by the vote of a majority thereof, present at any meeting of such corporators, duly convened for the consideration of the subject. At the trial, the justice found that it was authorized, by the majority of such corporators, present at such a meeting. To this finding of fact, an exception was duly taken by the plaintiff. This exception raises in this court the question, whether there was any evidence given upon the trial, tending to prove such fact, and would require an examination of the evidence given for the purpose, if the fact was at all material to the rights of the parties; but, having come to the conclusion that it was not material, I shall not examine the evidence upon this point. It was proved that the petition to the court, and all the subsequent proceedings, down to and including the giving of the deed, were authorized and carried on by a majority of the trustees of the plaintiff. The fourth section of the act, to provide for the incorporation of religious societies (3 General Statutes, 689), among other things, authorizes and empowers the trustees, to take into their possession and custody all the temporalities belonging to the church, congregation or society,

whether consisting of real or personal estate, and by their corporate name, to sue and be sued in all courts of law or equity, and to recover, hold and enjoy property, real and personal, belonging to such church, congregation or society, as fully and amply, as if the right or title thereto had originally been vested in the said trustees, and to purchase and hold other real and personal estate, and to demise, lease and improve the same for the use of such church, congregation or society, etc. In short, the trustees are constituted the managing officers and agents of the corporation, in respect to all its temporalities; and the statute points out no mode for the doing of any corporate act, in respect to its property, except by its trustees. But it is claimed, by the counsel for the appellant, that by the true construction of section 11 of the act, the trustees had not the power, to initiate proceedings for the sale of the real estate of the corporation, as provided in said section, without the sanction and authority of a majority of the corporators. The language of the section bearing upon this question is, that it shall be lawful for the chancellor (Supreme Court), upon the application of any religious corporation, in case he shall deem it proper, to make an order for the sale of any real estate belonging to such corporation, etc. By or through whose agency the application of the corporation is to be made, the section is silent; and it provides no mode of showing, that the corporation have authorized the application, or for the preservation of any evidence of such authority. We have already seen, that section 4 of the act, makes the trustees the sole managers of the corporation, in respect of its temporalities; and the fair assumption is, that it was the intention to constitute them agents of the corporation, in respect to the acts required by the eleventh section, for making sale of its real estate. Had it been deemed necessary for the corporators to meet as such, and authorize, by a formal resolution, the sale of real estate, or do any other act to render the sale valid, provision would have been made for convening such meeting and recording such resolution or act, together with the deed of the purchaser, so as to furnish enduring evidence of all

facts essential to sustain the title of the purchaser. The absence of any such provision, furnishes a forcible argument, that no such meeting or resolution was intended by the legislature. The act (§§ 3, 7), among other things, in effect provides, that every male person of full age, who has been a stated attendant on divine worship in the church, congregation or society for one·year, and who shall have contributed to the support of the church, congregation or society, according to the usages or customs thereof, shall be corporators. It could never have been the intention of the legislature, to make the title of a purchaser depend upon the question, whether a majority of those who approved of, or were opposed to, the sale, and to determine this question, as was attempted in this case, by parol proof of who were, in fact, corporators, and whether a majority so ascertained favored or opposed the sale. The true construction of the act, considered as a whole, is, that the trustees are the proper persons to act in behalf of the corporation, in the proceedings authorized by the eleventh section, and that their acts in this respect are binding upon the corporation. There was nothing determined in *Wyatt* v. *Benson* (23 Barb.), in opposition to these views. That was an action in equity, instituted by a majority of the corporators, against persons claiming to be the trustees of the corporation, to procure the revocation of an order obtained by such persons from the court, for the sale of the church property, and to enjoin them from proceeding to make such sale under and by virtue of such order. It is true that the learned judge, in his opinion states, that the trustees can execute no trust except such as is acceptable to the majority of the congregation; that the whole act shows that it was the intention of the legislature, to place the control of the temporal affairs of these societies in the hands of the majority of the corporators, independent of priest or bishop, presbytery, synod, or other ecclesiastical authority. A closer examination of the statute would, I think, have satisfied the judge, that such control is placed in the hands of those elected trustees by the corporators. But the judgment was not placed upon this ground. In another part

of the opinion, the judge states, that it might perhaps have been assumed, that the trustees did represent the views of the corporation in making the application, and that there was apparent authority for granting the consent of the court. The order is still in *fieri*, not having been executed; and no rights having been acquired under it, it is still under the control of the court, and it is therefore, competent for the court to revoke its consent to the sale; thus clearly showing, that in the opinion of the judge, an order for a sale, obtained upon the application of the trustees, without showing that a majority of the corporators concurred in such application, is apparently valid, and when executed the title of the purchaser will be upheld. Whether the remedy, in case the application of the trustees was against the wishes of the majority of the corporators, should not have been a motion to the special term, to vacate the order instead of an action in equity, is a question not necessary to consider in this case. In the matter of St. Ann's church (23 Howard, 285), it was expressly held, that no meeting of the corporators or any action by them was necessary, to authorize the trustees to make an application to the court, for the sale of the real estate of the corporation, but that the court acquired jurisdiction, upon the petition of the trustees in the absence of any action by the corporators. A like opinion was given by Mr. Justice HARRIS, in the matter of the second Baptist society in Canann (20 Howard, 324), although the point was not involved in the case. Those conversant with the disposition of these applications by the court, are aware that in some cases the petition contains a statement, that the application is made, pursuant to a resolution passed by a majority of the corporators, at a meeting held for the consideration of the subject; and in other cases no such recital is contained; and in neither case is proof taken nor any determination of the question, whether the application for the sale is approved by the majority of the corporators, unless opposition is made by some of the corporators to the sale prayed for. A judgment by this court, that the title of the purchaser could be defeated by proof, that there was no autho-

rity given by a meeting of the corporators to the trustees, or by proof that a majority were, in fact opposed to the sale, would be destructive to many titles acquired by purchasers in good faith at such sales, and create doubt and uncertainty as to all. In this case proof was offered by the plaintiff, that some statements of fact contained in the petition, tending to show the expediency of the conveyance from the plaintiff to the defendant were untrue. This was rightly excluded. If the court acquired jurisdiction of the subject-matter by the presentation of the petition, the order granted thereon was conclusive upon the plaintiff when acted upon, and the title of the defendant in the absence of fraud or collusion on its part (of which there was no pretence) was perfect. The only remaining question is, whether the transaction between the plaintiff and defendant, was a sale within the eleventh section of the act. If it was, the defendants established a complete title, and the judgment in their favor should be affirmed. The petition of the plaintiff's trustees in substance, stated that the plaintiff was the owner of the lots in question, and had erected a church edifice thereon, the whole costing $122,000; that their present indebtedness was $73,000; sixty-one of which was secured by mortgages upon the property; that from various causes stated in the petition, it was unable to pay its liabilities, or meet the current expenses of the church; that the plaintiff and defendant, a religious corporation under the laws of the State, located in Oliver street, and which for some time had contemplated disposing of its property and moving up town, had formed a plan and made arrangements for uniting the two churches upon the following terms; that the plaintiff should convey all its property to the defendant, and that the members of the Madison avenue Baptist church, were to become and be members of the Oliver street Baptist church; and, thereupon, the regular services of the united churches, were to be held in the house of worship then owned by the plaintiff; that the trustees of the defendant were to resign, and a new election of trustees had by the united church and congregation; that, thereupon,

the defendant was to take the corporate name of the plaintiff; that the real and personal property of both was to become liable for the indebtedness of both; an agreement for disposing of the pews in the edifice of the plaintiff, after the union was consummated; that the plan of union had been agreed to by both corporate bodies; that the defendant owned property over and above its indebtedness, of the value of from $50,000 to $65,000, which, upon the consummation of the union, would become applicable to the payment of the debts of the plaintiff, and that, by the union, the creditors of the plaintiff would obtain that amount of additional security for the payment of their debts; that the two churches had obtained subscriptions for about $15,000, to be applied to the payment of the floating indebtedness of each. Then follows a statement of the number of pew-owners and pew-hires concurring in the application, and that the others favor it, and that the rights of pew-owners and holders will be protected. Upon this petition the court based the order, for the conveyance of the property by the plaintiff to the defendant, in pursuance of which the deed was given. The stipulation executed by the trustees of the defendant to the plaintiff, at the time the deed was given, by which the defendant undertook to pay the debts of the plaintiff, does not affect the question, as it constituted no part of the contract for the conveyance, and was not referred to in the petition upon which the order was based. The inquiry is, whether the contemplated conveyance from the plaintiff to the defendant, upon the terms and consideration set out in the petition, would constitute a sale within the meaning of the eleventh section of the act. A sale, as defined by Blackstone (2 Com., 446), is a transmutation of property from one man to another, in consideration of some price or recompense in value; by Kent (2 Com., 468), as a contract for the transfer of property from one person to another for a valuable consideration; and, among the requisites to its validity, is mentioned the price paid or to be paid. Bouvier, in his Law Dictionary (vol. 2, p. 377), defines a sale, as an agreement by which one man gives a thing for a price in current money; that this

differs from a barter or exchange in this, that in the latter, the price, instead of being paid in money, is paid in goods or merchandise susceptible of a valuation. The term, as used in the statute, should be construed as defined by Blackstone and Kent. This would embrace every transfer for a valuable consideration, whether paid in cash or other property. In case payable in the latter, the property to be received should be specified in the petition, so as to enable the court to determine, whether the proposed contract is judicious on the part of the corporation. Tested by this construction, the arrangement set out in the petition, was in no sense a sale of the property by the plaintiff to the defendant. There was no price whatever to be paid therefor. The plaintiff, as a corporation, was to derive no possible benefit as a consideration for the conveyance. True, the members of the plaintiff's church were to be received into, and become members of, the defendant's church, and the plaintiff's corporators were to become corporators of the defendant. This may be regarded as a benefit conferred upon those classes as individuals, but can in no sense be so to the plaintiff, regarded as a corporation. Indeed, the arrangement could only be made effectual by the dissolution of the plaintiff; and this result it was the manifest purpose of the arrangement to effect. In *Wheaton* v. *Gates* (18 N. Y., 395), it was held by this court, that the trustees of a religious corporation, have no power to distribute its property among its individual members, or any class of them, and that an order for the sale of its real estate, obtained upon a petition showing such to be the purpose of the sale, was without jurisdiction and void, and that no title could be acquired by a purchaser, at a sale made in pursuance of such order. This necessarily determines, that the consideration for the sale must inure to the corporation making it, as such, and not to the corporators as individuals. Whether the consideration be pecuniary, or as in the present case, facilities for the enjoyment of religious worship, or of any other nature, can make no difference. The additional security to the creditors of the plaintiff under the arrangement, was not such a consideration

to the plaintiff as to constitute the transaction a sale, if, indeed, it was any consideration whatever. From the petition it appears, that these creditors were abundantly secure, and there is no intimation of any desire on their part for any additional security. The conveyance to the defendant, was not made upon a sale to it by the plaintiff, pursuant to the eleventh section of the act; and the title of the defendant cannot be sustained upon that ground. But it is insisted by the counsel for the defendant, that religious corporations had the same power at common-law of conveying their real estate as other corporations, which they still retain as regulated by the eleventh section of the act, requiring only the sanction of the court of the conveyance made. This is an important inquiry in the present case. If religious corporations, created under the act of 1784 (1 Greenleaf's Laws, ch. 18, p. 71), down to the adoption of the present eleventh section in 1806, possessed the power to alienate real estate, and the only restriction now existing arises from that section, it may well be, that any conveyance, made pursuant to an order of the court under section 11, would give a good title to the grantee. In the absence of any statute upon the subject, there can be no doubt that ecclesiastical corporations possessed this power. (*Mayor, etc.* v. *Lowten*, 1 Ves., & Bea., 244; *Dutch Church* v. *Mott*, 7 Paige, 78, and authorities cited ; 2 Black Com., 319 ; 2 Kent's Com., 281.) But several statutes were passed in the reign of Elizabeth, expressly taking this power from charitable corporations. (2 Bl. Com., 320, 321.) The question is, whether these restraining statutes were introduced into the colony of New York, and became operative as part of the common-law of the colony. 2 Kent's Com., 281, says, we have not re-enacted in New York those disabling acts ; but the better opinion upon the construction of the statute, for the incorporation of religious societies is, that no religious corporation can sell in fee any real estate without the chancellor's order. In *Bogardus* v. *The Trinity Church* ( 4 Paige, 178), the chancellor, speaking of the effect of English statutes upon the law of the State, says it is a natural presumption, and is,

therefore, adopted as a rule of law, that upon the settlement of a new territory by a colony from another country, especially when the colonists continue, subject to the same government, they carry with them the general laws of the mother country, which are applicable to the situation of the colonists in the new territory, which laws thus become the laws of the colony, until they are altered by common consent or legislative enactment. He further says, that the common-law of the mother country, as modified by positive enactments, together with the statute laws, which are in force at the time of the emigration of the colonists, become in fact, the common-law, rather than the common and statute law of the colony. In *De Ruyter* v. *The Trustees of St. Peter's Church* (3 Barb, Ch., 119), the chancellor says : Several statutes, however, were passed in the reign of Elizabeth, and one, in the first year of her successor, restraining alienations of church property by religious corporations, and restricting the power of leasing the same, for a longer period than twenty-one years, etc., and adds ; these statutes, forming a part of the law of England, at the time of the settlement of this State by colonists from England under the charter of the duke of York, were probably brought hither by those emigrants, and became a part of the laws of the colony, although they were not afterwards re-enacted here. (See same case, 3 Comstock, 239 ; also, *The Canal Appraisers* v. *The People*, 17 Wend., 584.) The practice of religious corporations desiring to sell real estate, of resorting to the legislature for special acts authorizing such sales, prevailing prior to the enactment of the eleventh section of the present act, shows that it was understood, that these acts of Elizabeth had divested them of the power to alienate, without the consent of the sovereign authority. (Willards Equity pp. 734, 735.) The eleventh section was enacted, to obviate the necessity of such applications to the legislature, in cases of sales where, as we have seen, the consideration must inure to the benefit of the corporation as such. In cases where it is desirable for these corporations, to alienate real estate in any other way, or for any other purpose,

application should still be made to the legislature for the necessary authority. I have reluctantly arrived at the conclusion, that the court had no power to make the order for the conveyance in the present case; and that therefore, no title was thereby acquired by the defendant. The whole case shows, that the plan of union originated in good faith, was fairly and honorably negotiated and consummated, and so far as can be seen, was eminently calculated, to promote both the temporal and spiritual welfare of all concerned. But the security of the real estate of all religious corporations, requires a strict adherence to the statute. There is no danger to be apprehended from conveyances founded upon sales. In such cases the court can readily ascertain, whether the consideration is adequate, and the proposed investment judicious. Power over such transfers may safely be exercised by the court. This is all the legislature has delegated to the court. In all other cases application must be made to the legislature. No questions arise upon this appeal, as to the equitable rights of the defendant, arising out of the mortgages purchased by it, upon the property or debts of the plaintiff which it has paid. There is no finding of facts, enabling the court to consider these questions. The court at the trial held, that the defendant acquired title under the deed to it from the plaintiff's trustees. This was error. The judgment appealed from must be reversed, and a new trial ordered, costs to abide the event.

All concur except Allen, J., not voting.

Judgment reversed.