[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 84 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 85 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 86 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 88 
Upon the prior appeal in this case to this court it was decided that the Supreme Court had no jurisdiction to grant the order authorizing the conveyance by the plaintiff of its church property to the defendant, and hence that such conveyance was invalid. It was held that the court could *Page 89 
authorize a conveyance only in the case of a sale, and that the facts did not show a sale. It was also held that by the common law in force in this state, religious corporations were restrained from alienating their real estate, and that when the conveyance now in question was made they could alienate their real estate only when authorized by the court, under section 11 of the act "to provide for the incorporation of religious societies," passed April 5, 1813, or when authorized by some act of the Legislature. (Madison Ave. Baptist Church v. BaptistChurch in Oliver street, 46 N.Y., 131.) The case, so far as concerns the sale and conveyance, is the same now in all its essential features as it was before. The jurisdiction of the Supreme Court to make the order authorizing the conveyance depended upon the facts before it when it made the order. Its jurisdiction cannot now be upheld by showing that facts existed which were in no way placed before it, or brought to its attention or considered by it. The Supreme Court based its action entirely upon the petition presented to it by the plaintiff, and the only facts it considered were such as were alleged in that petition, and it was decided that those facts did not give the court jurisdiction to make the order. But if every fact which actually existed had been brought to the attention of the court at the time the order was made, it still would not within the prior decision of this court have had jurisdiction to grant the order for the simple reason that all the facts do not show a sale within the meaning of section 11. The whole scheme was to effect a union of the two churches. The defendant was to absorb all plaintiff's property, assume its debts and take its corporate name and all its corporators and the congregation worshipping in its church. No price was agreed upon, as the value of plaintiff's property, which defendant was to pay. The plaintiff was to be dissolved as a corporation, and was to reap no benefit from the conveyance. On the contrary, the conveyance was intended to work its destruction. The defendant was to pay plaintiff's debts, which were mostly a lien upon its property, not for *Page 90 
plaintiff's benefit, but for its own benefit. The plaintiff, which was at once to die, could not be benefited by the scheme.
It is argued with much zeal on the part of the defendant that, although the conveyance was ultra vires, yet, as it had been executed, and the whole arrangement connected therewith had been consummated, it must be permitted to stand. But this point was necessarily involved in the prior appeal to this court, and must have been decided adversely to the defendant. It would nullify the restraining law if the conveyance of a religious corporation could be held valid, because it had executed and delivered its deed, and received the consideration therefor. Corporations may incur responsibilities by acts which are ultra vires. But contracts, which they are prohibited from making, whether executory or executed, cannot be held valid. They may sometimes be estopped from asserting the invalidity of such contracts, and thus be practically bound by them. But that is not because the contracts are valid, but because it would be a fraud upon the other party to assert their invalidity. (Bissell v. Mich. So.R.R., 22 N.Y., 258.)
It was, therefore, properly held in the court below, following the prior decision of this court, that the Supreme Court had no jurisdiction to grant the order authorizing the conveyance, and that the title to the property remained in the plaintiff. It remains to be considered whether the rights and obligations of the parties connected with, and dependent upon; the conveyance and transfer of possession of the property to the defendant were properly adjudicated in the court below. In 1862, at the time of the proposed union of the two churches, the plaintiff owned a church in Madison avenue, fully completed and equipped; but it was financially embarrassed, and unable to meet its current expenses. It was largely in debt, and the value of real estate at that time was greatly depressed. Its property had cost about $122,000. Its debts were at least $73,000; of which $61,500 were secured by mortgages upon its real estate. The *Page 91 
defendant at the same time owned a church in Oliver street, and real estate in other parts of the city worth upwards of $75,000, and it owed nearly $16,000, of which $7,000 were secured by a mortgage upon its real estate. Its members desired to secure a place of worship in a more desirable quarter of the city, and negotiations for a union with plaintiff were entered upon, and a scheme for the union was devised and agreed upon by plaintiff and defendant, of which the following were the principal features:
The plaintiff was to transfer and convey to the defendant all its real and personal property, and was then to be dissolved. It was to make out a list of its members duly certified by its clerk, and such members were to be received as members of the defendant. The trustees of the defendant were to resign, and six new trustees were to be elected, three from the former members of the plaintiff, and three from the former members of the defendant. The defendant was to have its name changed to that of the plaintiff, and the property of both corporations was to be liable for the debts of both. After such election of trustees there was to be a sale of the pews in the Madison avenue church, and regular religious services were to be conducted by the defendant in that church. This scheme was substantially carried out. The plaintiff under the order of the Supreme Court conveyed its property to the defendant, and the defendant, by an instrument in writing, agreed to assume and pay all plaintiff's debts. All the plaintiff's members were admitted to membership in defendant's church. Defendant's trustees resigned, and six trustees were elected in their places, as provided in the scheme; and there was a sale of the pews and change of defendant's name, as also provided. The defendant sold its property and realized therefrom, over and above the incumbrance thereon, the sum of $68,400.10. It was one of the conditions upon which the union was to be consummated that both churches should raise by voluntary subscriptions sufficient money to pay off the floating debts of both. Accordingly such subscriptions were made, and the *Page 92 
floating debts of both churches were paid, only the sum of $3,400 being raised by the plaintiff, and the balance being raised by the defendant. The defendant took possession of the Madison avenue church, and held possession thereof until November 13, 1876, when possession was delivered to the plaintiff under the judgment in this case. It paid all of plaintiff's debts, except the sum of $3,400 raised by plaintiff as above stated, the amount of its payments being upwards of $68,000. During the whole time it maintained in its church all the services usual in Baptist churches. The church was at all times open to all, and most of plaintiff's former corporators and members attended and participated in the services there conducted.
In the summer of 1863 a majority of plaintiff's trustees having become dissatisfied with what had been done repudiated the conveyance, and the union of the churches, and commenced this action in plaintiff's name to recover back the property conveyed. The result has been that the plaintiff has recovered the possession of the property, and upon an accounting, conducted upon principles laid down by the court below, the defendant has been brought in debt to the plaintiff in the sum of $9,681.20. The plaintiff has back all of its property in good condition, free of debt, which, in 1875, was worth $225,000; and the defendant, although acting in good faith, has lost all its property, owns no place of worship and is in debt to the plaintiff in the sum of nearly $10,000. The result is somewhat extraordinary, and would seem to be quite inequitable. It was reached by holding the conveyance void, and then, upon the accounting, crediting defendant with the amount it paid upon plaintiff's debts, and charging it with all pew rents received during about fourteen years, and allowing it nothing for the expenses of maintaining religious services in the church, which exceeded the amount of the pew rents.
So far as I can perceive there was nothing illegal in the scheme, but the conveyance of plaintiff's property. Nothing else done was in violation of any law. The two ecclesiastical *Page 93 
bodies could unite and be merged in one. New trustees could be elected, and they could go on and manage the church and maintain services therein. It was not illegal for plaintiff to put defendant in possession of its property upon some arrangement by which it was to maintain the services, and pay up plaintiff's debts, and it could even give the defendant a lien upon its property for any sums it might advance for plaintiff's benefit. (Manning v. The Moscow Presbyterian Society, 27 Barb., 52.) The plaintiff cannot recover back the property and also retain the consideration paid therefor. It was bound to restore to the defendant all it had received on account of the conveyance. This is not disputed. All the facts are set up in the answer, and equitable relief is demanded, and the account between the parties can be taken in this action. The defendant paid plaintiff's debts upon the faith of the title supposed to be conveyed, and upon the faith of the possession and enjoyment of the property, and in precise accordance with its agreement, and the court should not deprive it of this property until the plaintiff has in some way made restoration. There can be no moment of time when the plaintiff is entitled to have both the property and the consideration it received therefor. Restoration by the plaintiff should be a condition in such a case of restoration by the defendant. This, it seems to me, is demanded by general principles of equity and justice, and sanctioned by analogous cases. (Gibert v. Peteler, 38 N.Y., 165; Mickles v.Dillaye, 17 id., 80; Rose v. Watson, 10 H.L.C., 672; Dime
v. Grace, 5 DeG. S., 451.)
But there is another ground upon which defendant could claim possession of the property until the plaintiff made restoration. At the time of the conveyance to defendant, there were three mortgages upon plaintiff's property — one to secure $30,000, one to secure $12,500, and another to secure $18,000 of bonds which plaintiff had issued. The deed to the defendant was dated October 21, 1862, and then, with the consent of the plaintiff, defendant took possession of the property. The plaintiff was then in default in the payment *Page 94 
of the interest upon the first mortgage named, and on the twenty-eighth day of October the defendant paid the semi-annual interest which fell due thereon on the prior first day of August, and the defendant also paid the interest which fell due on the same mortgage February 1, 1863. On the 5th day of February, 1863, the defendant paid the semi-annual interest which fell due on the first day of the same month on the second mortgage above mentioned and, on the second day of May thereafter, purchased and took an assignment of said mortgage. On the 17th day of October, 1863, the defendant purchased and took an assignment of the first mortgage mentioned, and from time to time, after it took possession, it paid and took and held the bonds secured by the third mortgage above mentioned.
This suit was commenced July 30, 1863. At that time the defendant was a mortgagee in possession of the property, and it was lawfully in possession by the consent of the plaintiff. Upon the mortgage then held by the defendant, the plaintiff had not paid any interest since August 1, 1862, and by the terms of the mortgage the whole amount secured thereby was due. While under our present law a mortgagee cannot bring ejectment to obtain possession of the mortgaged premises, being lawfully in possession under a mortgage upon which some amount is due, he can retain such possession against the mortgagor until such amount has been paid. (Van Duyne v. Thayre, 14 Wend., 233; Phyfe
v. Riley, 15 id., 248; Kortright v. Cady, 21 N.Y., 343;Trimm v. Marsh, 54 id., 599; Russell v. Ely, 2 Black. [U.S.], 575.) It is ordinarily sufficient that a mortgagee islawfully in possession after default upon the mortgage. The court will not then deprive him of the possession until his mortgage has been paid. The possession need not be given under the mortgage, nor with a view thereto. In the case of Russell
v. Ely (supra), the mortgagee was not lawfully in possession. He had procured possession from a tenant after the expiration of the lease, and thus had no right to enter. Here, while the defendant had failed to get the *Page 95 
title, yet it was placed in possession by the plaintiff. It was not a wrong-doer. There was no law which restrained the plaintiff from putting defendant in possession of its property, and hence, if this action were to be treated as a simple action of ejectment, the plaintiff must have failed. But by the answer and the subsequent proceedings, the title being found in the plaintiff, the action was substantially turned into an action on the part of the plaintiff to redeem from the mortgages, and on the part of the defendant to foreclose the mortgages.
It matters not that defendant obtained the other mortgages after the commencement of the action. They were due before the action was finally at issue, and in adjusting the equitable rights of the parties, the court could properly require payment of them also. It is the practice of courts of equity, when they have once obtained jurisdiction of a case, to administer all the relief which the nature of the case and the facts demand, and to bring such relief down to the close of the litigation between the parties.
So much of plaintiff's debts as were not secured by the three mortgages must in this action stand upon the same footing as the mortgage debts. They were paid at plaintiff's request upon the faith of the property. The defendant would not have paid them but for its reliance upon the property. They were paid while it was in possession, with plaintiff's assent. They may be said to have been paid to save the property. One debt was in judgment, another was an assessment lien, and all of them could have been inforced against the property. Under such circumstances the plaintiff seeking equitable relief by way of redemption from defendant, a mortgagee in possession, should be required to do equity, by paying not only the debts secured by mortgages, but the amount paid by defendant upon other debts also. (Benedict v. Gilman,
4 Paige, 58; Bell v. Mayor, etc., 10 Paige, 49; Morrison v.Robinson, 31 Penn. St., 459; Harper's Appeal, 64 id., 315;McSorley v. Larissa, 100 Mass., 270; Sanders v. Hooper, 6 Beav., 246; Rose v. Watson, *Page 96 
10 H.L. Cas., 672; 1 White Tud. Lead. Cas. [5th ed.], 362-366.)
But the plaintiff claims that the pew rents received by the defendant have been more than sufficient to pay all the debts it owed when defendant took possession, and such is the judgment of the court below, and it therefore becomes necessary to inquire whether the accounting in that court was conducted upon proper principles.
The ordinary rule when a mortgagee is in possession, and the mortgagor seeks to redeem, is to make the former account for the rents and profits of the mortgaged premises. Generally the application of this rule will do justice between the parties. It should generally be applied when the premises are such as are kept for pecuniary profit, or have a rentable value, or can be made to yield a pecuniary income. The mortgagee should not make a profit by the possession, and the mortgagor should not suffer a loss by being deprived of the possession. The mortgagee should make to the mortgagor a just and equitable compensation for the possession. But the general rule cannot properly be applied in all cases. In some cases it will fail to do justice, and in others will do injustice. In a court of equity no general rule for compensation is inflexible. It may mould its relief, and give redress according to the circumstances of each case. When ordinary rules will not apply in the administration of equitable relief, or will work injustice, it must be guided by reason and justice. (Worrall v. Munn, 38 N.Y., 137; Morrison v.Robinson, 31 Penn., 456.) Now, in this case, the defendant made no profit out of the possession of plaintiff's church. It was a species of property not intended to be used for pecuniary gain, and which is generally burdensome rather than profitable. The church was erected and intended to be used exclusively for religious services, and it would be a breach of trust for the trustees of such a church to permit it to be used for any other purpose. And such a church is not intended for the exclusive use even of those who may at any particular time be its corporators or members. Religious services are *Page 97 
maintained therein for the benefit of all who will attend. It is the purpose of every Christian church to make converts, and extend its membership The Christian religion is essentially proselyting and aggressive. Its mission is to conquer the whole world, and hence no one is turned away from the doors of a Christian church so long as there is room. It was such property that the defendant took possession of. During the whole time of its possession it maintained services therein just as plaintiff would have been bound to. The services were just as much for those who, prior to the union, were members of plaintiff's church as for those who were members of defendant's church All of plaintiff's members became members of defendant's church, and nearly all of them continued to attend the services furnished by defendant. The services were free to all. The defendant had agreed to maintain such services, and during the whole time expended more upon them than the entire income raised from pew rents. Is it just and equitable, under such circumstances, that the defendant should be charged with all the pew rents, and allowed nothing for maintaining the services? It will not do to say that the defendant was conducting its own business in the church, and should, therefore, be allowed nothing for conducting it. It was doing the plaintiff's business as well. It was devoting the property to the precise purpose to which the plaintiff was bound to devote it. It maintained services for the benefit not of its own corporators only, but for the benefit of the plaintiff's corporators, and all others who chose to attend. It is true that the plaintiff as a mere corporate entity was in no way benefited by the services. But, in treating this question, it will not do to view the plaintiff simply as an abstraction, without soul, life or substance, and separated from all its corporators and members. It must be viewed practically as it was, with corporators and members, and a mission and duty to perform. All its members were admitted as members of the defendant, and three of them were chosen trustees of the defendant, and many of them doubtless acted and voted as corporators of the defendant, *Page 98 
and to some extent must have influenced its action. The defendant sold its property when real estate was depressed, and used its proceeds to pay off plaintiff's debts and save its property from sale by its creditors. Plaintiff's property has been saved until it is now worth more than it cost. In such a case what should be the rule upon which the accounting between the parties should be conducted? I think the rule adapted to this case, founded upon reason, justice and equity, is as follows: The plaintiff should pay to the defendant the amount the latter paid upon the debts owed by the plaintiff at the time of its conveyance, and the interest upon such sum from the time the defendant ceased to possess the property. For the use of the premises, the defendant should bear all the expenses of insurance, repairs, taxes, and for maintaining and keeping up the church and services therein, and should also lose the interest upon the money paid upon plaintiff's debts. This rule, we believe, will come nearer to doing justice between the parties than any other which has been suggested. This case may be likened to that of a vendor of land who receives the purchase-money and gives possession of the land, but afterwards fails to convey a title. In such a case, the general rule is, that he must take back his land and the purchaser take back his money. The one loses the use of the land and the other the use of his money. (Worrall v. Munn,53 N Y, 188; Kirtland v. Pounsett, 2 Taunt., 145; Leggott v.Metropolitan R. Co., L.R. 5 Ch. App. Cas., 716; MetropolitanR. Co. v. Defries, L.R. 2 Q.B. Div., 189, and on Appeal, 387.)
The defendant is not to be prejudiced in this case, because it paid some of the debts and continued in possession of the property after this suit was commenced. Its trustees were under a strong obligation to defend its title to the property. Before the suit was commenced there was the admission to membership in its church, and the resignation and election of trustees. It had sold pews to persons who relied upon its right to do so, and it had sold its property and paid a *Page 99 
portion of plaintiff's debts. It had established services in plaintiff's church, and had doubtless incurred obligations in reference to them, and had acted in all things in good faith towards the plaintiff. The defendant was then entitled to an accounting; and all the debts of plaintiff paid after the suit was commenced were paid while the conveyance was held valid by the court below.
I am unable to ascertain from the evidence or findings precisely how much defendant paid upon the plaintiff's debts, including the mortgages. The defendant should be allowed all it paid upon the principal of such debts, and for interest due and paid by it down to the time it took possession; and then upon the principal and interest thus paid it should be allowed interest from the time possession was again delivered to the plaintiff. As the property is abundant security for the amount of debts claimed, it is not important that the possession should be restored to it. The court below may specify a time within which the amount found due the defendant must be paid, and may order a sale of the property in default of such payment, as in a case of foreclosure.
This litigation has been long and expensive. It must have embarrassed the Christian work of the Madison Avenue Baptist Church. It must have engendered discord where unity ought to prevail; and it would seem that a small share of that charity which "suffereth long and is kind" ought now to bring it to a speedy termination.
The judgment below must, therefore, be affirmed, so far as it adjudges the deed to the defendant invalid, and the title to be in the plaintiff; and in other respects it must be reversed, and the case must be remitted to the court below for an accounting upon the principles herein indicated, neither party to recover costs against the other in this court.
All concur, except ALLEN, J., not sitting, and MILLER, J., not voting.
Judgment accordingly. *Page 100