Supreme Court, March, 1921.    [Vol. 114.

Matter of the Petition of BETH ISRAEL OF BROWNS-
VILLE, a Religious Corporation, for Leave to Mort-
gage Real Estate.

(Supreme Court, Kings Special Term, March, 1921.)

Religious corporations — when application for leave to mortgage
real property must be on consent of majority of members.

The trustees of a religious corporation having a congrega-
tional form of government have no power to initiate proceed-
ings to sell or mortgage the real property of the corporation
without the consent of the members.

Under the present Religious Corporations Law such consent
of the members given by a majority vote at a meeting, or in
some manner in accordance with legally adopted by-laws, is
requisite to authorize the trustees to make such an application.

The application herein making no reference to any such by-
law now in force will be denied with leave to renew on further
papers.

APPLICATION by a religious corporation to mortgage
its real property.

William E. Smith, for petitioner.

No appearance in opposition.

BENEDICT, J. This is an application to authorize
the petitioner, a religious corporation incorporated
under article X of the Religious Corporations Law,
to mortgage its real property. It does not appear
that the members of the congregation have authorized
the mortgage. The trustees of a religious corpora-
tion having a congregational form of government
have not, in my opinion, power to initiate proceedings
to sell or mortgage the real property of the corpora-
tion without the consent of the members. The rule

seems formerly to have been otherwise. *Madison Ave. Baptist Church* v. *Baptist Church in Oliver St.,* 46 N. Y. 131. But the statute in force when the conveyance under consideration in the case cited was made differed materially from the statute now applicable. The powers of trustees of religious corporations incorporated under chapter 60 of the Revised Laws of 1813, were defined in section 4 of said act as follows:

" That the trustees of every church, congregation or society, herein above mentioned, and their successors, shall respectively have and use a common seal, and may renew and alter the same at their pleasure, and are hereby authorized and empowered to take into their possession and custody all the temporalities belonging to such church, congregation or society, whether the same consist of real or personal estate, and whether the same shall have been given, granted, or devised, directly to such church, congregation or society, or to any other person for their use; and also by their corporate name or title, to sue and be sued in all courts of law or equity, and to recover, hold and enjoy all the debts, demands, rights and privileges, and all churches, meeting-houses, parsonages and burying places, with the appurtenances, and all estates belonging to such church, congregation or society, in whatsoever manner the same may have been acquired, or in whose name soever the same may be held, as fully and amply as if the right or title thereto had originally been vested in the said trustees; and also to purchase and hold other real and personal estate, and to demise, lease and improve the same, for the use of such church, congregation or society, or other pious uses, so as the whole real and personal estate of any such church, congregation or society * * * shall not exceed the annual value

or income of three thousand dollars; * * * and also to repair and alter their churches or meeting houses, and to erect others if necessary, and to erect dwelling houses for the use of their ministers, and school houses and other buildings for the use of such church, congregation or society; and such trustees shall also have power to make rules and orders for managing the temporal affairs of such church, congregation or society, and to dispose of all monies belonging thereto, and to regulate and order * * * all other matters relating to the temporal concerns and revenues of such church, congregation or society."

Section 3 of the same act, providing for the incorporation of churches other than Protestant Episcopal and Reformed Protestant Dutch churches authorized the male members to elect trustees " to take the charge of the estate and property belonging thereto, and to transact all affairs relative to the temporalities thereof."

The power to sell the real property of such a corporation is not included in the above recital of powers, because that was provided for in section 11 of the same act, authorizing the chancellor of the state, on the application of any religious corporation, if he shall deem it proper, to make an order for the sale of any of its real estate.

Under this statute it was held, in the case above cited, that the trustees, who were constituted " the managing officers and agents of the corporation, in respect to all its temporalities," had power to initiate the proceedings before the chancellor for leave to sell its real property, without the consent of the members.

The present statute is materially different from the act of 1813. The powers of trustees of such relig-

ious corporations as the petitioner are prescribed by section 5 of the Religious Corporations Law as follows:

"The trustees of every religious corporation shall have the custody and control of all the temporalities and property, real and personal, belonging to the corporation and of the revenues therefrom, and shall administer the same in accordance with the discipline, rules and usages of the corporation and of the ecclesiastical governing body, if any, to which the corporation is subject, and with the provisions of law relating thereto, for the support and maintenance of the corporation, or, providing the members of the corporation at a meeting thereof shall so authorize, of some religious, charitable, benevolent or educational object conducted by said corporation or in connection with it, or with the denomination, if any, with which it is connected; and they shall not use such property or revenues for any other purpose or divert the same from such uses. By-laws may be adopted or amended, by a two-thirds vote of the qualified voters present and voting at the meeting for incorporation or at any subsequent meeting, after written notice, embodying such by-laws or amendment, has been openly given at a previous meeting, and also in the notices of the meeting at which such proposed by-laws or amendment is to be acted upon. By-laws thus adopted or amended shall control the action of the trustees  *  *  *."

The difference between these provisions and those above quoted from the act of 1813 is obvious, and under the present law the consent of the members, given by a majority vote at a meeting, or in some manner in accordance with legally adopted by-laws, is, in my opinion, requisite to authorize the trustees of a religious corporation having a congregational

Supreme Court, March, 1921. [Vol. 114.

form of government to apply for leave to sell or mortgage its real property. It may be that the applicant corporation in the present case has adopted a by-law which dispenses with any requirement that the action of the trustees in respect of the sale or mortgage of the church property be approved or authorized by the members. If there be any such by-law now in force, it is not referred to in the petition.

Application denied with leave to renew on further papers.

Application denied.