Bank of Manhattan Trust Company, as Successor Trustee, etc., Plaintiff, *v.* Twenty-one Sixty-six Broadway Corporation and Others, Defendants.

Supreme Court, New York County, March 4, 1932.

*Carter, Ledyard & Milburn*, for the plaintiff.

*Hutton & Holahan*, for the defendants.

McCook, J. The plaintiff, trustee under a mortgage or deed of trust dated March 1, 1928, made by the defendant builder and the defendant church, in the course of an action to foreclose the mortgage moves to strike out certain denials and defenses pleaded by the church in its answer to the complaint. I state first, in brief, the facts set up in the " third defense and counterclaim."

The Manhattan Congregational Church (herein called the church), a member of the Congregational denomination, was the owner of the land 2166 Broadway and an old church building then on the premises. In 1927 one White, organizer of the Twenty-one Sixty-six Broadway Corporation (herein referred to as the builder), proposed to the pastor that if the church would lease to the builder

the land for a period of forty-two years, at a yearly ground rent of $20,000, the latter would demolish the old building and erect a modern hotel structure at a cost of not less than $2,000,000; the new building was to contain suitable rent-free quarters for the use of the church; the church was to join in a mortgage on the premises which was to provide that the church's quarters were to be rent-free and free of the lien of the mortgage, while the church was to assume no obligation on the bond or mortgage. These terms were embodied in a proposed form of lease.

At a meeting of the members of the church, held on May 25, 1927, the above terms were explained and discussed, and its trustees were authorized to execute with the builder the lease already described; on July twenty-fifth of the same year the trustees obtained an order of this court authorizing the making of such a lease.

Thereafter, without the approval or consent of the members of the church, the trustees, as the result of two modifications, each authorized by an *ex parte* order of this court, executed a lease and mortgage (the mortgage now in suit) which created a mortgage lien upon the church quarters and deprived the church of its right to occupy the premises rent free.

The church, defending this action, contends by a series of defenses already mentioned and hereinafter discussed in detail, that the mortgage in its present form is void as to it because consent of its members was not obtained as required by law; and it demands by way of counterclaim reformation of the lease and mortgage to conform with the terms agreed upon by the church members and incorporated in the court order of July 15, 1927. Plaintiff challenges the defense and counterclaim as insufficient in law, also urging that in this action the counterclaim is improperly interposed. This last ground may be dismissed from further consideration, as it clearly lacks merit and does not seem to be seriously argued.

The main dispute reduces itself to this one proposition of law: Have the trustees of a Congregational church the power to lease or mortgage the church property without the consent of the members? In support of the affirmative, the plaintiff cites *Madison Ave. Baptist Church* v. *Baptist Church in O. St.* (46 N. Y. 131), where the Court of Appeals, writing in 1871, uses language clearly in point but in my opinion mere dictum, since it was determined that the purported conveyance was void for lack of consideration. Despite the apparent general acceptance prior to 1921 of the *Baptist Church* case as standing for the proposition that the consent of the members is unnecessary, the defendants urge that the statute, which is now section 5 of the Religious Corporations Law, has been amended since then to such an extent that the consent of members is now

necessary, citing *Matter of Beth Israel* (114 Misc. 582). Sitting in the Supreme Court for Kings county in 1921, BENEDICT, J., analyzed the statute in force at the time of the decision of the *Baptist Church* case (R. L. 1813, chap. 60, § 4), and concluded that it differed in material respects from the present section 5, under which he stated the law to be as follows (at pp. 582, 583): " The trustees of a religious corporation having a congregational form of government have not * * * power to initiate proceedings to sell or mortgage the real property of the corporation without the consent of the members. The rule seems formerly to have been otherwise. (*Madison Ave. Baptist Church* v. *Baptist Church in Oliver St.*, 46 N. Y. 131.) "

Section 5 of the Religious Corporations Law (as amd. by Laws of 1925, chap. 459) in substance provides that the trustees of every religious corporation shall have the custody and control of all the temporalities and property, real and personal, belonging to the corporation, and shall administer the same for the support and maintenance of the corporation in accordance with its discipline, rules and usages, " and they shall not use such property or revenues for any other purpose or divert the same from such uses." Justice BENEDICT based his decision upon this section alone.

Section 12 of the same law (as amd. by Laws of 1925, chap. 458)* provides for the sale, mortgage or lease of real property of religious corporations, but while it expressly provides for the manner of sale of property of a Protestant Episcopal church, a Roman Catholic church, and a Ruthenian Catholic church of the Greek rite, it makes no specific provision for the manner in which a Congregational church may lease or mortgage its real property, except to state the necessity for a court order.

Section 169 of the same law, under article 8, which refers expressly to Congregational churches, reads as follows: " Limitation of powers of trustees. The trustees of any such incorporated church shall have no power to call, settle or remove a minister or to fix his salary, nor without the consent of a corporate meeting, to incur debts, beyond what is necessary for the administration of the temporal affairs of the church and for the care of the property of the corporation; or to fix or change the time, nature or order of the public or social worship of such church."

Does the expression " incur debts," as used in section 169, include entering into a mortgage? The legal conception of a mortgage under ordinary circumstances is no doubt merely that of security for a debt, and not the debt itself. It constitutes a

---

* Since amd. by Laws of 1931, chap. 175.— [REP.

lien on real property. Here a debt existed, running to the plaintiff. It was incurred primarily by the builder, but its payment was enforcible against the church, not directly by an action on a bond or debt, but indirectly, and yet just as effectively, by foreclosure of the mortgage lien. Does such a situation come within the meaning of the statutory phrase " incur debts? "

That " debt," as used in certain statutes, may be construed as including a mortgage was decided in *Matter of Lambie* (94 Mich. 489), where decedent purchased property subject to mortgage without assuming the mortgage. The administrator applied for leave to mortgage the real estate to pay off said mortgage. The court said (at p. 491): " The sole question is, therefore, whether the mortgage debt is a ' debt against the estate ' under section 6105. * * * It is insisted that a mortgage is simply a security, — a lien upon the land. * * * But it is, nevertheless, security for a debt,— a lien securing an indebtedness. The property is charged with the payment of the debt. A mortgage has been defined as a debt by specialty. A debt is defined as any claim for money,— that which one is bound to pay. Coke says ' *debitum* ' signifies not only a debt for which an action of debt lies, but generally any debt to be yielded or paid."

Again at pages 492 and 493: " There is no question here but that this estate, consisting only of this one parcel of land, which has been pledged to pay this specific sum, is legally liable to pay this charge upon it, and it can make no difference that decedent was not personally liable, but took this property subject to the pledge * * *. The word ' debts ' in the statute should be given its ordinary signification, rather than a technical construction which would be contrary to the practical construction which has been given it up to the present time."

Accordingly the court affirmed the order below giving the administratrix the authority to mortgage the property of the decedent.

In *People* v. *Mayhew* (26 Cal. 656) appears the following (at p. 662): " A charge upon a specific parcel of a person's property for the payment of a sum of money constitutes a debt as fully as a demand which is or may be made a charge upon all his property, both present and future, and it makes no difference in this respect, whether the lien is acquired by express agreement or by operation of law. * * * If a person owning real estate, mortgages it to secure the payment of money, and then conveys it, we frequently say that the debt, so secured, is not the vendee's debt, and it is not his debt in the sense of a personal contract or liability, but it is his debt to the extent that his property is liable for its payment."

The use of the word " incur " in the statute broadens the scope

of the word "debts." Thus it is stated in *Crandall* v. *Bryan* (5 Abb. Pr. 162, 169): "The use of the word 'incurring' favors this construction. It is an inappropriate word in connection with the word 'obligation,' if the latter is limited to a case of contract. Men contract *debts*, they *incur* liabilities. In the one case they act affirmatively, in the other the liability is *incurred* or *cast* upon them by act or operation of law. The use of this word shows to my mind conclusively that the Legislature intended something beyond *contracts* — something not embraced within the word *debt.*"

It may be argued in support of the motion that although a debt incurred (and not necessary for the administration of the church's affairs — See Religious Corp. Law, § 169) would be beyond the powers of the trustees, unaided by the consent of the members, a mortgage securing the same debt would be valid, on the theory that it was not a debt. This confronts plaintiff with a *reductio ad absurdum*. A loan made to the church for $1,650,000 and paid over to it would be invalid, assuming absence of the members' consent. The same loan made to a stranger, and paid to him and not to the church, but secured by a mortgage on the church property, would be valid both as a loan and a mortgage. Such a ruling would permit unscrupulous trustees to mortgage their church property to the full limit of the equity, pocket the moneys given by the mortgagee, abscond or dissipate the moneys, and compel the church to repay the loan or lose its property — either course resulting in a repayment by the church of the debt. There is no hint of such circumstances in the case before me, but that would be the logical consequence of supporting the principles asserted on plaintiff's behalf.

My view is that section 169 prohibits the trustees of a Congregational church from exercising the power to mortgage the premises for such a purpose as this lease or mortgage without the consent of the members. The intention of the Legislature was to protect the church against this kind of injury.

Considering sections 5, 12 and 169 together, the conclusion is irresistible that the trustees of a Congregational church have no power to mortgage its property without the consent of its members. Section 171, while not applying directly to the situation at bar, is nevertheless pertinent, because it provides that consent of the members is necessary for the transfer and conveyance of the real property to another Congregational organization by a Congregational church.

The requirement of the statute as thus interpreted seems, without going beyond court decisions and law writers, to be in accord with the spirit and tradition of the Congregational churches and their

peculiar form of government, which consists of control by the membership of the individual congregations. The court said in *Matter of Lloyd's Memorial Congregational Church* (178 N. Y. Supp. 104, 105) that " * * * in the Congregational churches the congregation exercises large, if not exclusive, control." White in his latest work on Corporations (Vol. VIII, pp. 157, 158) states that the present rule for Congregational churches is contained in *Matter of Beth Israel* (*supra*) and that *M. A. Baptist Church* v. *Baptist Church in O. St.* (*supra*) no longer represents the law.

If consent was essential and not obtained, the Supreme Court *ex parte* orders authorizing the lease and mortgage cannot cure the inherent invalidity of the transaction. (*M. A. Baptist Church* v. *Baptist Church in O. St., supra; Wardens, etc., of St. James' Church* v. *Rector, etc., of Church of the Redeemer*, 45 Barb. 356.) The fact that it has been executed on both sides and fully performed will not permit the mortgage to stand, nor create an estoppel. (*Madison Av. Bap. Ch.* v. *Oliver St. Bap. Ch.*, 73 N. Y. 82, 90; *Associate Presbyterian Congregation* v. *Hanna*, 113 App. Div. 12, 15; *Dudley* v. *Congregation, etc., of St. Francis*, 138 N. Y. 451.)

It must be remembered that this is a motion addressed to the pleadings. As such, every inference is to be drawn in defendants' favor, and the facts in the answer must be accepted as true. We have no thought by this decision to pass in advance on facts as they will be developed on the trial, or to limit the parties in their proof. Plaintiff may still show that the required consent was obtained. It may perhaps also show that such consent was waived by the by-laws. (Cf. *Matter of Beth Israel, supra*, at p. 586.) We merely hold that the facts pleaded in the counterclaim, if true, state a cause of action and a defense.

The difficulties, present if not future, to which the views expressed by the court may give rise are not forgotten. Churches are no more entitled to unjust enrichment than other creatures, natural and artificial, and moneys paid in good faith and on proper authority should not be lost to investors. If the plaintiff's investment was made upon proper authority, it still has an opportunity to show the fact upon the trial. But the law, as it stood on the date of the church meeting which approved the proposed lease and mortgage and the dates of the various court orders mentioned in the pleadings, is what determines the issues raised by these motions, not what may have been believed to be the law by our plaintiff, the church trustees, the builder, or others situated like them. The defendant church is entitled to the full protection of the laws enacted for that purpose.

The motion to dismiss the counterclaim is accordingly denied.

The church ple ds as a partial defense that $200,000 worth of participating certificates were issued without consideration. This defense also, in my opinion, is good. The reduction of plaintiff's claim need not be deferred to the computation.

As a second separate defense the church pleads much matter relating to the Commonwealth Bond Corporation, which originally underwrote the building loan mortgage. I am of opinion that the purported defense set out in paragraphs 6 to 18, inclusive, of defendants' answer to plaintiff's amended complaint is insufficient in law. The theory is that this action is not brought in good faith and that the Commonwealth Bond Corporation has been guilty of a breach of fiduciary relationship. Such matters, so pleaded, do not constitute a defense in an action of foreclosure. (*Monica Realty Corporation* v. *Bleecker*, 229 App. Div. 184; *D. & G. Girl Coat Co., Inc.*, v. *Kafka*, 218 id. 607; affd., 245 N. Y. 646.)

Plaintiff has moved to strike out all the denials contained in the amended answer on the ground that they are sham and frivolous, etc., and all the separate defenses on the ground that they are sham and frivolous, etc., and insufficient in law, and has moved for judgment on the pleadings. The court cannot say that the denials are sham or frivolous on their face, and holds that decision upon this part of the motion should be reserved for the trial. I hold the first partial defense contained in paragraph 5 of the answer is sufficient, and that paragraphs 19 to 42, inclusive, also are sufficient; that the second separate defense contained in paragraphs 6 to 18, inclusive, is insufficient.

Plaintiff's motion is, accordingly, granted only to the extent of striking out the second separate defense. In all other respects it is denied. No costs.

The court has disregarded, in considering these motions, the affidavits submitted on both sides, as it must under the repeated rulings of the Appellate Division of this department, such as *Monica Realty Corporation* v. *Bleecker* (*supra*).