FARJEON v. INDIAN TERRITORY ILLUMINATING OIL CO. et al.

(Supreme Court, Appellate Division, First Department. July 7, 1911.)

1. BROKERS (§ 49*)—PROCURING PARTIES TO MAKE CONTRACTS—RIGHT TO COMMISSIONS—"BENEFICIAL ARRANGEMENT."

A person contracting to procure a purchaser of the corporate stock of two corporations or sufficient capital to develop their properties for a commission when the sale is made, or any beneficial arrangement is concluded with parties introduced by such person, and, when the consideration for the stock or funds to develop the properties are received, is entitled to commissions only when he procures a purchaser of the stock or funds to develop the properties; the words "any beneficial arrangement" being construed with reference to the kind of financial arrangement which such person was employed to negotiate.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 70–72; Dec. Dig. § 49.*]

2. BROKERS (§ 49*) — PROCURING PARTIES TO MAKE CONTRACTS — RIGHT TO COMMISSIONS.

Such broker induced third persons to contract to organize a new corporation and deliver its stock to stockholders of the existing corporations in exchange for their stock. The stockholders of the existing corporations obtained in exchange for their stock certificates in the new corporation evidencing a smaller interest in the properties, but the third persons never procured any capital with which to develop the properties, nor did they sell any of the stock in the new corporation. Held, that the contract made with the third persons did not amount to a sale of the stock of the original corporations nor the procurement of funds to develop their properties, and the commission was not earned.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 70–72; Dec. Dig. § 49.*]

Appeal from Special Term, New York County.

Action by Albert Farjeon against the Indian Territory Illuminating Oil Company and others. From an interlocutory judgment of the Special Term (120 N. Y. Supp. 298) in favor of plaintiff, defendants appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Robert Van Iderstine and Wendell P. Barker, for appellants.

William P. Maloney, for respondent.

MILLER, J. This is an appeal by some of the defendants from an interlocutory judgment (120 N. Y. Supp. 298), which adjudges that the plaintiff is entitled to 20 per cent. of the 3,000,000 shares of the capital stock of the defendant, the Indian Territory Illuminating Oil Company, and to any profits, emoluments, or dividends thereon, and requires the defendants to account therefor. The plaintiff bases his right to recover upon the following paper writing:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Referring to our various conversations on the subject of securing, through you, either a purchaser of all of the stock of the Osage Oil Company and a controlling interest in the stock of the Phenix Oil Company, which companies together control the Indian lease of the Osage Nation; or securing for us a financial negotiation whereby we can more fully develop the territory embraced in the said Indian lease; we hereby authorize you to secure for us either a purchaser for said stock or sufficient capital for development as before referred to, and we hereby agree that should we sell or conclude any financial arrangement with or through the parties you introduce we will pay you a commission of twenty (20%) per cent., on any sums we receive, whether in money, stock, bonds or other securities, the said commission to be paid to you as and when we receive the consideration for said stock or funds to develop the said lease or leases, it being understood that during your negotiations, we are to have the privilege of seeking elsewhere for a purchaser, or for funds to develop as aforesaid and if we are successful in securing a purchaser before you do, we are simply to notify you of the fact, which notification shall act as cancellation of this authority.

"Phenix Oil Company, by J. A. Simmons, President.

"June 5th, 1901, J. A. S.
         "E. B. F.
"Witness:
         "H. L. Jouffriou."

It is claimed that that was delivered to him by the said Simmons, who was president of the Phenix Oil Company, soon after the 5th day of June, 1901, pursuant to a letter, of like tenor, written to him on said date by said Simmons. The plaintiff introduced J. A. Bates and J. P. McCarthy to said Simmons, and on the 9th day of November, 1901, a contract was entered into between Bates, McCarthy, Simmons, one E. B. Foster, the said Phenix Oil Company, and the Osage Oil Company. That contract provided that Bates and McCarthy should organize a corporation to be known as the Indian Territory Illuminating Oil Company, with an authorized capital of $3,000,000, the par value of the shares to be $1 each; that thereupon all of the capital stock of the Osage Oil Company and 1,500 shares, at least 80 per cent. of the capital stock, of the Phenix Oil Company, should be transferred to the said corporation; that the said 3,000,000 shares of stock of the Indian Territory Illuminating Oil Company should be divided into three equal parts, 1,000,000 shares to go to the stockholders of the Phenix Oil Company and the Osage Oil Company, 1,000,000 shares to go to Bates and McCarthy, and 1,000,000 shares to remain as treasury stock, 250,000 shares thereof to be pledged to the said Foster as trustee to secure the payment of $80,000, and the payment of any liabilities of the Phenix Oil Company and the Osage Oil Company, 250,000 shares to constitute what was termed a "utility fund" to be disposed of upon the order of the directors, and 500,000 shares to be considered as "treasury stock clear" to be sold and disposed of for the benefit of the treasury. Ten thousand dollars of the said $80,000 was to be paid as soon as it was received from the sale of the stock. Out of every 6 shares of stock sold one share was to be taken from the 500,000 shares of treasury stock, 1 share from the 250,000 shares to be held by the said Foster as trustee, 2 shares from the 1,000,000 shares belonging to Bates and McCarthy, and 2 shares from the 1,000,000 shares belonging to the stockholders of the Phenix Oil Company and the Osage Oil Company. When the said $80,000 was

paid to Foster, the balance of 250,000 shares held by him was to be relieved of the trust. The entire 3,000,000 shares were to be held by Bates and Foster as trustees, and deliveries thereof were to be made upon the order of Bates and McCarthy, who were termed selling agents. Whenever the trustees should so determine, all of the stock, except the treasury stock, was to be distributed to the persons entitled thereto. Bates and McCarthy agreed to secure subscribers to the stock of said company for the purpose of making the said payment of $80,000 and to develop the territory, they to retain 20 per cent. of all sales to cover the expenses thereof.

[1] The plaintiff asserts, and bases his right to recover solely upon, the proposition that upon the execution of that contract he became entitled to 20 per cent. of the capital stock of the said new corporation to be organized. He bases that contention upon the use of the words "any financial arrangement" in his alleged contract of June 5, 1901. That contract must receive a reasonable construction. The plaintiff was employed, if at all, to procure a purchaser of the stock of the Phenix Oil Company and the Osage Oil Company or sufficient capital to develop the properties of said oil companies. He was to receive 20 per cent. of any amount received on the sale of the said stock, or, if no sales were effected, 20 per cent. of the capital procured by him for development, when "the consideration for said stock or funds to develop the said lease or leases" was received. The words "any financial arrangement" must be construed with reference to the sort of financial arrangement, which the plaintiff was employed to negotiate.

[2] The contract with Bates and McCarthy did not amount either to a sale of the stock of the Phenix Oil Company and of the Osage Oil Company, or to the procurement of capital, with which to develop the properties of the said companies. It provided merely for their merger into a third company and for the exchange of their capital stock for the capital stock of the new company. Nothing was sold by that exchange or merger. The stockholders of the old company acquired nothing whatever. Indeed, they parted with two-thirds of their property, one-third to Bates and McCarthy, and one-third to the treasury of the new company to procure funds. By that contract they were to procure in exchange for their certificates, certificates evidencing a lesser interest in the property, and, when it was made, they were no nearer a sale of their stock or the procurement of capital, with which to develop their properties, than they were before. If the plaintiff's construction of the contract upon which he sues is correct, the defendants agreed to part with a controlling interest in their property, 33⅓ per cent. to Bates and McCarthy and 20 per cent. to the plaintiff, without receiving a dollar for their stock or a dollar of capital, with which to make their stock valuable. Manifestly that was not the sort of financial arrangement which the parties had in mind. If Bates and McCarthy had, under their contract, procured capital with which to develop the properties, or if they had sold any of the 1,000,-000 shares reserved to the original stockholders, it may be that the plaintiff would have been entitled to 20 per cent. of the capital so procured and of the avails of sales so made, provided Simmons had

the authority to make the contract. However, the plaintiff rested his case upon the right to receive 20 per cent. of the entire capital stock of the said new company, regardless of the fact that it merely represented the same property as the stock for which it was exchanged.

While it was unnecessary for the defendants to do so, they showed that Bates and McCarthy failed to perform their contract. Soon after it was made, Bates died, and McCarthy undertook to sell his interest in it on January 25, 1902, to third parties, who obtained control of the corporation, and from whom the original owners regained control only after instituting suits in Oklahoma and New Jersey, and after parting with part of their property in compromise. While McCarthy claims to have expended some money in procuring the incorporation of the new company, and in advertising, it does not appear that one dollar of capital was ever brought into the treasury by him or Bates, although they succeeded in disposing to bona fide purchasers of nearly 100,000 shares of stock. It is said that the properties were developed. The development appears to have consisted of a survey made, while the corporation was in the control of said third parties, for the purpose of enabling them to sell leases.

It is unnecessary to consider the other questions involved in the case. The plaintiff failed to show, either that he procured a purchaser of the stock of the said Phenix Oil Company and the said Osage Oil Company, or that he introduced any one who provided capital to develop the territory embraced in the Indian lease, owned by said companies.

There was therefore no basis whatever for any judgment in his favor, and the interlocutory judgment must be reversed and a new trial ordered, with costs to abide the final award of costs. All concur.