NETTIE RICHTËR, Plaintiff, *v.* THE SEA GATE ASSOCIATION, Defendant.

Supreme Court, Kings Special Term, February, 1923.

Corporations — proposed transfer of property of membership corporation to business corporation for stock — when injunction will issue.

A mere exchange of a member's right to share in the property of a membership corporation for a stock interest in a realty corporation to be formed, which interest would be less than the share in the property of the membership corporation, is not a " sale " within the contemplation of section 71 of the General Corporation Law.

The evidence in an action by a member of a membership corporation to restrain it and its officers from conveying its real property to a realty corporation to be formed, and from accepting in payment or consideration for such transfer the stock of the other corporation when formed and from distributing such stock, considered, and *held*, that the proposed plan or scheme was merely one to transfer all the property of the defendant to a business corporation without consideration, the carrying out of which scheme would effect the dissolution of the defendant in violation of law, and would not constitute a " sale " within the meaning of the statute.

SUIT for an injunction.

*H. S. & C. G. Bachrach* (*Herman S. Bachrach*, of counsel), for plaintiff.

*Albert W. Meisel*, for defendant.

LEWIS, J. This is an action by a member of the defendant, a membership corporation, to restrain the defendant and its officers from transferring and conveying to another corporation the real property of the defendant and from accepting in payment or consideration the stock of such corporation to be formed and from distributing such stock.

The defendant is a membership corporation, having been incorporated about the 19th of July, 1899. The property sought to be transferred was all acquired from the Norton Point Land Company in January, 1901, for $50,000. Twenty-five thousand dollars was paid in cash and a mortgage was executed and delivered by the defendant to the Norton Point Land Company for the balance of $25,000. The cash was obtained by the contribution of the members of the association secured by a bond issue. The bonds and the mortgage were subsequently paid and retired out of the funds of the corporation derived from sales of the property and from dues or maintenance charges paid by members and non-members. From the time of the organization of the defendant until 1919 bills for dues were

rendered to every property owner in Sea Gate and all the money received went into a common fund.

In 1919 the by-laws were amended. Thereafter members received bills labeled " dues " and non-members bills labeled " maintenance charges," but the dues and the maintenance charges were levied and assessed in proportion to the assessed value of the property which was owned. The assessment was fixed, after the amendment, so that members and non-members owning the same amount of property paid like amounts.

On August 1, 1922, a resolution was adopted which provided for a " *proposed plan for partial distribution of the assets* of the Sea Gate Association to its members."

The plan proposed was to create a corporation to be known as the Sea Gate Estates, Inc., with a capital stock of $175,000, consisting of 175,000 shares of the par value of one dollar each.

The resolution provides that

" An application will be made by the Sea Gate Association to the Supreme Court for permission to sell the real estate  *  *  * to the new corporation for $149,380.00, slightly less than the assessed valuation (adopted to avoid fractional shares as much as possible) and to take in payment therefor stock of the new corporation amounting to $149,380.00 in par value.

" Upon the consummation of this transaction, the realty company would own all the above mentioned real estate and have left unissued capital stock amounting to $25,620.00 in par value.

" This unsold stock could be disposed of by realty company from time to time to pay taxes and other expenses as money was needed, thus avoiding assessments of any kind on stockholders.

" The Sea Gate Association having disposed of its real estate, excepting the streets, will next distribute the stock of the realty company amongst its members. It will distribute the $149,380.00 in the following ratio, to wit: 35 one dollar shares for every $1,000.00 in real estate owned by a member according to the 1922 New York City assessment."

Is the plan proposed a sale within the contemplation of section 13 of the Membership Corporations Law?

" Corporations are created by statute and have no powers except those conferred by statute directly or indirectly." *Schwab* v. *Potter Co.*, 194 N. Y. 409, 414.

" The essence of a sale is the transfer of the property in the thing from buyer to seller for a price." 35 Cyc. 27.

And barter or exchange is defined (35 Cyc. 40): " If the consideration for the transfer of the property is other goods, no price being fixed in money, the transaction is an exchange or barter."

That the sale must be one whereby moneys are paid appears from article 4, section 71, subdivision 7, General Corporation Law, which requires the petition to state " The application proposed to be made *of the moneys* realized from such sale, mortgage or lease."

In *Farjeon* v. *Indian Territory Illuminating Oil Co.*, 146 App. Div. 23, plaintiff sought to recover commissions pursuant to a contract whereby he was authorized to secure either a purchaser or sufficient capital for an oil lease development. The court said (at p. 26), in reference to the contract which he had negotiated, that it " did not amount either to a sale of the stock of the Phenix Oil Company and of the Osage Oil Company, or to the procurement of capital with which to develop the properties of the said companies. It provided merely for their merger into a third company and for the exchange of their capital stock for the capital stock of the new company. Nothing was sold by that exchange or merger. The stockholders of the old company acquired nothing whatever. Indeed, they parted with two-thirds of their property, one-third to Bates and McCarthy, and one-third to the treasury of the new company to procure funds. By that contract they were to procure in exchange for their certificates, certificates evidencing a lesser interest in the property and, when it was made, they were no nearer a sale of their stock or the procurement of capital with which to develop their properties, than they were before."

The proposed plan is a conveyance and transfer, but not a sale within the contemplation of the section. The plaintiff would be merely exchanging her rights to her share of the property in the membership corporation for a stock interest in the realty corporation to be formed, which interest in the realty corporation would be less than her share in the property as a member of the defendant.

In the 2d paragraph of section 13 it is provided that the court may grant leave to a membership corporation *to convey* real property without consideration to another membership corporation created for the same or kindred purposes.

In *Fearless Fire, Hook & Ladder Co. of Middle Village* v. *Veteran Volunteer Firemen's Ass'n.*, N. Y. L. J. Feb. 5, 1913, opinion by Justice Blackmar, it was sought to transfer property from one membership corporation to another membership corporation. The court stated that the conveyance being for a nominal consideration was not a sale within the meaning of the statute, citing *Madison Ave. Baptist Church* v. *Baptist Church in O. St.*, 46 N. Y. 131. It was further held that the conveyance from the plaintiff to the defendant could not be sustained because the petition seeking approval of the transfer failed to allege that the purposes were kindred, and as a matter of fact were found to be entirely dissimilar.

It is proposed under this resolution to sell the bath houses and the property upon which they stand; the chapter building is also included. The only property which is not to be sold are the streets and the beach. The sale, therefore, would destroy in large part the purposes for which it was formed. It would divest the corporation of all its tangible property of any value and leave the corporation a mere shell with the objects for which it was formed but without the property necessary to carry out those objects. The whole scheme cannot be regarded as a sale, but one to transfer all the property to a business corporation without consideration and to effect a dissolution of the defendant in violation of law.

Judgment for the plaintiff.

Judgment accordingly.