(153 App. Div. 482.)

SEVERSON, Commissioner of Charities, v. MACOMBER.

(Supreme Court, Appellate Division, Third Department. November 22, 1912.)

1. ESTOPPEL (§ 22*)—BY BOND—ABANDONMENT OF WIFE—SECURITY—LIABILITY.

A person, signing as surety an undertaking authorized by Code Cr. Proc. § 901, for the release from custody of a husband, convicted of abandoning his wife and children, which recites that the husband was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

convicted, and that he was directed to pay a specified sum weekly for the support of his wife and children for one year, and which further recites that the condition of the undertaking was that, if such sum were so paid, the obligation should be void, is estopped from relying on the defense that the husband was insane at the time of his conviction, and that the conviction was illegal for that reason.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 27–51; Dec. Dig. § 22.*]

2. ESTOPPEL (§ 22*)—BY BOND—RECITAL OF OBLIGATION.

A surety is estopped from disputing the facts recited in his obligation, and from claiming that his bond was given without consideration, or that the judicial proceedings in which it was given were irregular.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 27–51; Dec. Dig. § 22.*]

3. PRINCIPAL AND SURETY (§ 90*)—ABANDONMENT—SECURITY FOR SUPPORT—LIABILITY.

A surety on an undertaking conditioned on a husband, convicted of abandoning his wife and children, paying a specified sum per week for their support for one year, is not relieved from liability because of the insanity of the husband during the year, and his inability in consequence thereof to earn money, since the undertaking is an absolute one, forfeited by default in making the payments stipulated.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 140; Dec. Dig. § 90.*]

4. PRINCIPAL AND SURETY (§ 90*)—OBLIGATION OF SURETY—DEFENSES.

A surety is bound by his obligation, though his principal was or may become insane; and he is bound by his covenant, though his principal, through disability, cannot be held.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 140; Dec. Dig. § 90.*]

5. HUSBAND AND WIFE (§ 319*)—ABANDONMENT—SECURITY FOR SUPPORT—LIABILITY.

Where one convicted of abandoning his wife and children, in violation of Code Cr. Proc. § 899, gave an undertaking, as authorized by section 901, conditioned on his paying a weekly sum for a year for the support of the wife and children, the surety was liable for defaults occurring on each weekly payment, in view of section 904, as amended by Laws 1909, c. 506, declaring that an undertaking shall be forfeited by failure to make weekly payments as directed.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1115; Dec. Dig. § 319.*]

·Betts, J., dissenting.

Appeal from Broome County Court.

Action by John F. Severson, as Commissioner of Charities of the City of Binghamton, against Henry M. Macomber. From an order setting aside a directed verdict for plaintiff, and granting a new trial, he appeals. Reversed, and judgment directed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Laverne M. Twining, of Binghamton (Rollin W. Meeker, of Binghamton, of counsel), for appellant.

Hinman, Howard & Kattell, of Binghamton (Thomas B. Kattell, of Binghamton, of counsel), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HOUGHTON, J. On the 6th day of November, 1909, one Irving Lathrop, upon a plea of guilty, was convicted by a magistrate of Broome county of being a disorderly person, in that he had left his family, consisting of a wife and children, without adequate support and in danger of becoming a burden upon the public, and had neglected to provide for them according to his means. Thereupon the magistrate, in pursuance of the power given by section 901 of the Code of Criminal Procedure, required that Lathrop give security by written undertaking in the penal sum of $400 for the payment of $6 weekly for the space of one year to the Broome Humane Society for the support of his wife and children. The defendant, Macomber, signed such undertaking in Lathrop's behalf, whereupon he was discharged. In compliance with such undertaking Lathrop paid the weekly sum for the term of 17 weeks and then ceased payment. When 15 weeks had been in default, the plaintiff brought action on such undertaking against the defendant as surety, claiming the right to recover the entire $400 as a penalty for its breach, and upon the trial a verdict for that amount was directed against him. Upon a motion for a new trial, the verdict was set aside and a new trial granted, from which order the plaintiff appeals.

[1] The defendant insists that the undertaking is not a valid obligation against himself, because Lathrop was not of sound mind at the time of his conviction, and, if that position is not tenable, that at the time Lathrop ceased making payments he was afflicted with a religious mania amounting to insanity, which rendered him incapable of performing work for the purpose of earning money to make the payments, or of appreciating the necessity therefor, or his obligations under the bond, and that, if this be not so, in no event is he liable for the full amount of the penalty of $400 stipulated in the bond.

The defendant signed the undertaking as surety after Lathrop had pleaded guilty, and he cannot in this action question the propriety or legality of such conviction. Where one signs an undertaking in proceedings against a husband for the abandonment of his wife, he cannot be heard to say that the parties were never married (Commissioners of Charities v. O'Rourk, 34 Hun, 349); nor can one who signs as surety a bond of a corporation applying for a liquor tax certificate deny that the corporation was legally organized (Lyman v. Gramercy Club, 39 App. Div. 661, 57 N. Y. Supp. 376).

The defendant signed the undertaking in question for the purpose of releasing Lathrop from custody. The undertaking recites that he was duly convicted, and that an order was made in pursuance of such conviction that he pay $6 per week for the support of his wife and children, for the space of one year, and the condition of the undertaking was that, if that sum was so paid, the obligation should be void; otherwise, to be in full effect.

[2] A surety is estopped from disputing the facts recited in his obligation, and he will not be allowed to claim that his bond was given without consideration, or that the judicial proceedings in which it was given were irregular, or that the necessary preliminary steps had not been taken. Decker v. Judson, 16 N. Y. 439; Harrison v. Wilkin,

69 N. Y. 412; 32 Cyc. 69. The defendant could not avail himself of the defense that Lathrop was insane at the time of his conviction, and that such conviction was illegal for that reason, and the court, therefore, properly excluded the evidence upon that subject.

[3] Nor was the defendant relieved from his undertaking by the fact that within the year Lathrop became insane. The obligation which the defendant signed was not that Lathrop would work what he could and pay at least $6 per week for the support of his family, but the engagement that he would pay that sum was absolute. He agreed, upon signing the undertaking, to make good any nonperformance by his principal, and he was not relieved from paying by the fact that Lathrop would not work and earn money, or that he was disabled from doing so by sickness or insanity. Although Lathrop may have become insane, still his legal duty to support his family existed, and he would have been liable for actual necessities furnished to them. Stuckey v. Mathes, 24 Hun, 461; In Matter of Wing, 2 Hun, 671.

[4] The defendant was bound by his obligation, notwithstanding the fact that his principal was or may have become insane. A surety is bound by his covenant, although his principal, through disability of infancy or coverture, cannot be held thereon. Kimball v. Newell, 7 Hill, 116; Erwin v. Downs, 15 N. Y. 575; Pingrey on Suretyship & Guaranty, § 135. The death of Lathrop during the year would have discharged the defendant, because his obligation to support his family would then cease. Stinson v. Prescott, 15 Gray (Mass.) 335.

In any event, it is very questionable whether the defendant could take advantage under any circumstances of Lathrop's insanity. It is the party who is insane that can avoid a contract. The sane party thereto cannot disaffirm on the ground that the person with whom he contracted was insane when the contract was entered into. Allen v. Berryhill, 27 Iowa, 534, 1 Am. Rep. 309. The obligation which the defendant assumed was one of payment upon default of his principal. Inability to pay by reason of sickness or insanity was not excepted in the undertaking, and cannot be read into it; and within the meaning of the law they were not acts of God, rendering performance of the contract impossible. Inability to attend court because of sickness is a defense to the surety in an action upon a bond for his appearance (People v. Tubbs, 37 N. Y. 586); and involuntary absence from duty as the result of mental aberration is not cause for removal of a police officer because of absence without leave (People ex rel. Mitchell v. Martin, 143 N. Y. 407, 38 N. E. 460). But the undertaking in question did not call for any special personal act on the part of Lathrop which his sickness made him incapable of doing, and the principle upon which those cases were decided has no application, and the learned trial court was correct in refusing to receive evidence of Lathrop's insanity, for it constituted no defense.

[5] It remains to be considered to what extent the defendant is liable. Section 901 of the Code of Criminal Procedure provides that, upon confession or conviction of a person for nonsupport of his family as a disorderly person, the magistrate before whom such convic-

tion is had may require that the person so convicted give security by written undertaking, with one or more sureties, approved by the magistrate, to the following effect: If he be a person described in the first or second subdivision of section 899, that he will pay to the county superintendent of the poor, or to the overseer of the poor of the town, city, or village, or to a society for the prevention of cruelty to children, weekly for the space of one year thereafter, a reasonable sum of money, to be specified by the magistrate for the support of his wife and children; or that the sureties will pay the sum mentioned in the undertaking, and which must be fixed by the magistrate.

Lathrop was convicted under the first subdivision of section 899, and the magistrate fixed the reasonable sum for him to pay weekly at $6. The nominal amount of the bond was $400, which would more than cover all the weeks of the entire year; but the condition of the bond was that $6 should be paid weekly for the space of one year. The law did not require a gross sum to be stated in the undertaking. All it required was that weekly payments should be made, and that an undertaking to secure such weekly payments should be given. If Lathrop fulfilled the obligations of the bond by paying $6 per week for the entire year, the defendant as his surety was not bound to make up the difference between $312 (the amount which 52 weeks would yield at $6 a week) and $400, the amount of the bond. So, too, if Lathrop fulfilled the condition of the bond by paying the weekly sum for a part of the year, the liability of the surety was extinguished to the extent of such payments. Lathrop did pay in accordance with the conditions of the undertaking for 17 weeks, and he was in default at the time of the bringing of the action for 15 weeks. The defendant became liable as default occurred upon each weekly payment, and at the time of the bringing of the action was liable for the default of 15 weeks, which at $6 per week amounted to $90. The extent of the defendant's liability, therefore, at the time the action was brought, was not $400, but was $90 only.

It was not incumbent upon the plaintiff to prove that it had supported the family of Lathrop, or had paid to it the sum of $6 per week, during the term of his default. The undertaking which the defendant gave must be read in connection with the statute under which it was given. Section 904 of the Criminal Code, as amended by chapter 506 of the Laws of 1909, expressly provides that the undertaking given in pursuance of the provisions of section 901 shall be forfeited by the failure to make the weekly payments directed by the magistrate. It was, therefore, unnecessary for the plaintiff to have paid anything, or to have incurred any liability, before bringing an action upon the undertaking; for such undertaking was forfeited upon failure to make the stipulated payments.

The case of Goetting v. Normoyle, 191 N. Y. 368, 84 N. E. 287, dealt with sections 901 and 904 of the Code of Criminal Procedure as they existed before the amendment of 1909. Before such amendment, those sections clearly provided for an undertaking of indemnity only; and hence no cause of action arose on such undertaking, except as indemnity for moneys expended. These sections, since their

amendment, do not provide for an undertaking of indemnity, but provide for an absolute undertaking, forfeited by default in making the payments stipulated.

Under the powers given this court by section 1317 of the Code of Civil Procedure, it becomes our duty to direct such judgment as ought to have been given.

Judgment is therefore directed against the defendant for $90, with costs.

LYON, J., not sitting.

BETTS, J. (dissenting). One Irving M. Lathrop was a resident of the city of Binghamton, Broome county. On or about the 23d day of October, 1909, his wife, Mary Lathrop, complained against the said Lathrop, her husband, that he was a disorderly person, and had actually abandoned her, his lawful wife, and their three lawful children, "and left them in danger of becoming a burden upon the public, and neglected to provide for them according to his means." Upon this complaint a warrant against Lathrop as a disorderly person for non-support was issued by the city judge of Binghamton, and Lathrop was brought before the city judge and entered a plea of not guilty. Later the plea of not guilty was withdrawn, and a plea of guilty entered, whereupon the city judge entered judgment that the said Lathrop "give bond with one surety in the penal sum of four hundred dollars ($400.00), conditioned to pay six dollars ($6.00) weekly for term of one year at office of Broome County Humane Society, of Binghamton, N. Y.," and in default of said bond the said Lathrop was to be committed to the Broome county jail. Lathrop gave a bond, which the defendant, Macomber, signed as surety, dated the 6th day of November, 1909, for the amount of $400, reciting the conviction before the city judge, and the direction that he should give a bond, and then the condition of the bond is as follows:

"Now, therefore, the condition of this obligation is such that, if the above-named Irving Lathrop shall pay to said Broome County Humane Society the sum of·six ($6.00) dollars weekly for the space of one year next ensuing, for the support of his wife and children, as has been ordered by the said special city judge and acting as city judge, then this obligation to be void; otherwise, to remain in full force and virtue."

This bond or undertaking was dated November 6, 1909, and signed by both Lathrop and Macomber. Later Lathrop went to work for Macomber, and earned some money, which was paid to the Broome County Humane Society upon that undertaking, either by Macomber or by Lathrop, and Lathrop made some separate payments, so that altogether upon this bond or undertaking $102 had been paid up to and including March 7, 1910. On the 21st day of June, 1910, this action in question was commenced by the plaintiff in the City Court of Binghamton upon the said bond, obligation, or undertaking executed by Lathrop, and by Macomber as surety; judgment being asked for $400 against the defendant, Macomber.

Recall now that the condition of the undertaking sued on was to

pay $6 weekly for one year, which would be $312, and that $102 has been paid thereon, and that the action was brought in June, 1910, the complaint being sworn to June 14, 1910, and the year would not elapse until November 6, 1910. The defendant answered in a denial, and an affirmative allegation that Lathrop was at the time of the execution of the undertaking and at the time of the trial insane, and also at the time of his pleading guilty was insane, and did not understand his act, and that hence the undertaking was void and of no effect.

The case came on for trial in the City Court in Binghamton, and the plaintiff obtained a judgment for $400, the amount named in the undertaking. The defendant appealed to the County Court, where a trial was had before 11 jurors; the plaintiff presenting the judgment and the undertaking and the proceedings in the City Court at the time of the arrest, and proof of the payments of $102 on the undertaking, and the concession that John F. Severson was the commissioner of charities of the city of Binghamton, "and that during the year covered by the bond in question no support was given by the city of Binghamton, or Mr. Severson, as commissioner, to the wife or children of Irving M. Lathrop, and that no application was made for such support by them, or any one in their behalf," when the plaintiff rested.

Thereupon the defendant moved for a nonsuit and dismissal of the complaint, upon the ground that no facts sufficient to constitute a cause of action, nor the cause of action alleged in the complaint, had been proven, and on the further ground that it affirmatively appears that neither the plaintiff nor the city of Binghamton, at any time during the year covered by the bond, furnished to the wife or the children of Irving M. Lathrop any support, and that no application was made for such support, whereupon this motion was denied, and considerable evidence was given by the defendant as to the insanity of Lathrop. At the conclusion of defendant's testimony the plaintiff moved to strike out all of this evidence as to the insanity of Lathrop at the time of his pleading guilty and later, which the court granted.

Included in the evidence offered by the defendant were proceedings taken, beginning December 1, 1910, by John F. Severson, commissioner of charities, the plaintiff here, against the said Irving M. Lathrop, to have him committed as an insane person, which proceedings were successful, and on December 2, 1910, the said Lathrop was committed to the Binghamton State Hospital, an institution for the custody and treatment of the insane by the county judge of Broome county.

The court directed (after requests of the defendant to go to the jury upon various questions had been denied), on motion of the plaintiff, a verdict in favor of the plaintiff for $400. The defendant moved to set aside the verdict and for a new trial, upon the grounds specified in section 999 of the Code of Civil Procedure. The court ultimately granted the motion to set aside the verdict and judgment and for a new trial, and from that the plaintiff appeals here, and that is the question now before us.

It will be recalled that in this case neither the commissioner of charities nor the city of Binghamton were at any expense whatever for care of Lathrop's family. No assistance was asked for or granted; also that the action was begun some time before the conclusion of the year. I would view this obligation as an obligation at the utmost to pay $6 a week for 52 weeks, which would be $312, and upon that obligation $102 had been paid.

A somewhat similar case arising under the charter of the city of New York was Goetting, as Commissioner of Public Charities of the City of New York, v. Normoyle and others, 191 N. Y. 368, 84 N. E. 287, in which an action was brought upon a bond given under the provisions of the New York City Charter, which were somewhat similar to the provisions of the Code of Criminal Procedure under which the action in question is brought. The court held, citing People v. Pettit, 74 N. Y. 324, which arose under the provisions of the Revised Statutes similar to the present Criminal Code provision as follows (the court also citing People v. Cullen, 153 N. Y. 635, 47 N. E. 894, 44 L. R. A. 420, which arose under New York City Consolidation Act):

"I think the plaintiff was bound to prove, upon the issue tendered, that the defendant's family had been left without support, or such members of the family as came within the purview of the statute, and that they had been supported wholly, or to some extent, at the public expense, within the holding in People v. Pettit, supra. That would be a breach of the defendant's undertaking, and it was readily susceptible of proof. To hold otherwise, in my opinion, involves the illogical proposition that his previous conviction was evidence of his breach of the condition of his subsequent undertaking. For these reasons, I think that the order of the Appellate Division was right, and therefore, under the plaintiff's stipulation, that judgment absolute should be ordered in favor of the respondents, with costs in all the courts."

Cullen, Chief Judge, and two other judges, dissented; but they agree, upon the proposition that is before us in this case, with what I have quoted from the prevailing opinion by Judge Gray.

The action here was defended upon three grounds—the first being that no support had been given Lathrop's family, and no application was ever made for any, and that the wife was the owner of valuable real estate; second, that Lathrop's failure to make the payments was caused by his insanity, which was an act of God, which discharged the defendant, even could he otherwise have been held liable; and, third, that the alleged conviction of Lathrop, as well as the bond in suit, was illegal and void, because of the incompetency of Lathrop at the time of the conviction and execution of the bond.

Without any regard to the second two defenses, I think that the first defense is sufficient, and that the judgment was properly set aside, because no support had been given to Lathrop's family, or applied for, and because the suit was prematurely brought.

I therefore recommend that the judgment appealed from be affirmed, with costs.