supra; Pollak v. Dodge, 81 Misc. Rep. 216, 142 N. Y. Supp. 495), of which, on appeal to the Court of Appeals, our opinion is now a part (Code of Civil Procedure, § 1237, as amended by chapter 535, Laws of 1913), and the plaintiff was not in the least prejudiced by the recital, it is manifest that the motion was made solely with a view to obtaining an extension of plaintiff's time to appeal. That purpose, however, was thwarted by inserting in the order a provision that the amendment was made nunc pro tunc as of the date of the entry of the judgment, and without prejudice to the service of notice of the entry of judgment theretofore made.

[2] The clerk, however, was without authority to permit the entry of the judgment in this form, for neither the order of this court nor, so far as appears, the order of the Special Term, granting judgment on the pleadings on the motion of the defendant Yglesias, directed that the dismissal should be upon the merits. It is not for the clerk on entering judgment to construe the orders or decisions of the court. His function is limited to entering the judgment or order directed by the opinion, order, or decision of the court, and there was no authority to incorporate in the judgment the words "upon the merits," notwithstanding the fact that they do not change its legal effect. Folcarelli v. Ward, 132 App. Div. 316, 116 N. Y. Supp. 1093; Card v. Meincke, 70 Hun, 382, 24 N. Y. Supp. 375; Peggo v. Dinan, 72 App. Div. 434, 76 N. Y. Supp. 565; Petrie v. Trustees of Hamilton College, 92 Hun, 81, 36 N. Y. Supp. 636. See Code of Civil Procedure, §§ 1203, 1222, 1223, 1236. The plaintiff, therefore, was entitled to have those words which were erroneously inserted in the judgment stricken out, and the court is not required, on such a motion, to decide whether or not the judgment is, in fact, upon the merits, and is not at liberty to deny the motion if that be decided in favor of the party entering the judgment, but is required merely to decide whether the incorporation of those words in the judgment was authorized by the order or decision of the court or by any statute. The effect of the judgment must be left to depend upon the adjudication made by the court, and not upon the construction thereof by the clerk.

It follows, therefore, that the order was properly granted, and it should be affirmed, with $10 costs and disbursements. All concur.

---

(161 App. Div. 769)

DROVERS' DEPOSIT NAT. BANK OF CHICAGO v. NEWGASS.

(Supreme Court, Appellate Division, First Department. April 17, 1914.)

1. GUARANTY (§ 89*)—ACTIONS—BURDEN OF PROOF.

Where the guarantor of a note claimed that he had been discharged by reason of a conveyance to his creditor, he has the burden of proving the defense.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 102; Dec. Dig. § 89.*]

2. GUARANTY (§ 91*)—ACTIONS—EVIDENCE.

In an action against the guarantor of a note, evidence *held*, insufficient to show that his obligation had been discharged by a conveyance to the holder of the note.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 104; Dec. Dig. § 91.*]

3. MORTGAGES (§ 33*)—"DECLARATION OF TRUST"—SUFFICIENCY.

Where a creditor wrote his debtor, stating that property conveyed to him would be reconveyed if the indebtedness was discharged within one year, but that it would otherwise be sold and the proceeds applied to the indebtedness, the communication was a declaration of trust within Real Property Law (Consol. Laws, c. 50) § 242, declaring that a declaration of trust may be proven by a writing subscribed by the declarant, and hence the conveyance was only in the nature of a mortgage, and did not prevent the creditor from suing on the debt.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 67–82; Dec. Dig. § 33.*

For other definitions, see Words and Phrases, vol. 2, p. 1903.]

4. TRUSTS (§ 59*)—DECLARATION—REVOCATION.

Where a declaration of trust is once made, it cannot be revoked, and the declarant is estopped to deny that he holds the property, except on the terms and conditions therein stated.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78–81; Dec. Dig. § 59.*]

Appeal from Trial Term, New York County.

Action by the Drovers' Deposit National Bank of Chicago against Louis Newgass. From a judgment dismissing the complaint, plaintiff appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Breed, Abbott & Morgan, of New York City (Henry H. Abbott, of New York City, of counsel, and Hiram Thomas and Edward A. Craighill, Jr., both of New York City, on the brief), for appellant.

Lawrence C. Hull, Jr., of New York City (J. Brownson Ker, of New York City, of counsel), for respondent.

CLARKE, J. The action was brought to recover the amount due and unpaid on a promissory note for £2,050, drawn by Alfred J. Nicholson to the order of Tichenor-Grand Company. By a separate writing dated Chicago, Ill., September 30, 1909, the plaintiff was requested to discount for said Tichenor-Grand Company five promissory notes for £2,050 each, made by Nicholson. Said writing contained the following:

"We do hereby promise and agree to pay said notes at maturity, according to the tenor thereof, and we do hereby waive notice of the acceptance of this guaranty."

This was signed by M. H. Tichenor, W. D. Grand, and the defendant, Louis M. Newgass.

It was conceded that under the law of Illinois all joint obligations and covenants shall be taken and held to be joint and several obligations and covenants. It was proved that the balance due was $5,-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

428.48. The court held that the paper in question was an original undertaking. In his answer the defendant pleaded, inter alia, a release and discharge from all claims and demands by the plaintiff. The learned court has found: "That the defendant on or about February 11, 1911, transferred by conveyance absolute in form to William A. Tilden, the president of the plaintiff bank at Chicago, Ill., for the benefit of the plaintiff, all the property which he owned, consisting of various parcels of real estate situate in the state of Illinois, worth more than the total amount of his indebtedness to the plaintiff, and that said bank accepted said conveyance of said real estate from defendant in full payment, satisfaction, and discharge of all claims and indebtedness whatsoever which the plaintiff had against defendant, including his personal liability upon the undertaking set forth, * .* * " and, as a conclusion of law, "that by reason of the transaction found by the fifth finding of fact herein, the defendant paid, satisfied, and discharged the claim of the plaintiff against the defendant upon said undertaking, and was entitled to judgment dismissing the complaint."

[1] The defense set up was affirmative, and the burden was upon the defendant of establishing it by a fair preponderance of evidence. The finding of fact quoted, supra, is erroneous in stating that the conveyance referred to on or about February 11, 1911, was to William A. Tilden, president of the plaintiff bank. He had been the president of said bank down to June 2, 1908. The evidence is undisputed that since that time he has not acted for the bank in any capacity, except as a director, and was such director on said February 11, 1911.

Assuming all the other facts to be true, a serious question would be presented whether a mere director of a bank would have the power to release rights and claims of his bank, based upon written notes and guaranties. That question has not been argued, but nevertheless it is in the case. We proceed to consider the record as presented.

[2] The defendant testified that he had known Mr. William A. Tilden and had done business with him for more than 20 years, and that they were very friendly. That he had a business of his own in Chicago, which had nothing to do with the Tichenor-Grand Company, and:

, "We did our business with the Drovers' Bank, and, of course, when the Tichenor-Grand Company went into the hands of a receiver, it did not help my business any. I owed Mr. Tilden's bank, the plaintiff in this action, about $38,000. I went to Chicago and we had a meeting, and he asked me what I was going to do. 'Well,' I says, 'you know me; you know what I have always done—always made good in every way, shape, and form.' He says, 'Yes, you have.' 'Well,' I says, 'I am going to make good now.' I says, 'I have got so many shares of bank stock in your bank; I own this property on Oakwood boulevard,' my home it was, where I lived. That property was free and clear. It cost me $45,000. It was a very pretty place. * * * Well, I turned over everything I had in the world for what I owed him, and he thanked me very much and said he would release me from all claims in every way, shape, and form, if I would do that, which I did. That was two years ago in February, this month. I gave him everything I had. When I gave him this, he said it was for the money that I owed his bank. Well, I always did business with him; he was the president. I deeded this property to him in consideration of his releasing and discharging me for that. When I deeded all this property that I have mentioned and described to the plain-

tiff in this action, Mr. Tilden, its president, said that it cleaned up all indebtedness of every kind which the bank had against me. I had this conversation with Mr. Tilden in which he said that if I would deed this property to him, he would not hold me responsible, about the 11th of February, 1911. Q. At the time you deeded this property to Mr. Tilden, didn't you get back a receipt or some kind of an agreement regarding that? A. Not that I know of; I might have received something which I don't remember now. Q. Well, do you recall receiving a letter from him dated February 13, 1911, a letter from him in that form [showing paper]? A. I never got anything like that, sir, not that I know of. Q. You say you never got any receipt whatever? A. No, sir; I don't think anybody else did."

The paper about which he was asked is as follows:

"Mr. L. M. Newgass, Chicago, Ill.—Dear Sir: If you pay and discharge all of the indebtedness of yourself and of M. Newgass & Son to the Drovers' Deposit National Bank within one year from the date hereof, I will convey to you, the property that you have conveyed to me, described as follows. [Then follows the description of five lots]; otherwise the property to be sold and applied on said indebtedness."

Mr. Adams, an attorney practicing in Chicago and representing the bank, testified that he had an interview with Mr. Newgass after February, 1912, and prior to April 30, 1912, in his office in New York.

"Mr. Newgass told me that Mr. Tilden had always been his friend, and proceeded to relate how he had assisted Mr. Tilden to make collections in the Tichenor-Grand matter—how he had helped him and given Mr. Tilden deeds of all his property in Chicago, and how he thought Mr. Tilden should not press him but to get after the others. I said that I knew all about that, but he had Mr. Tilden's letter and knew as well as I did that the bank did not want his property; that the bank was not in the real estate business, their business was lending money; they did not want the property—they were only holding it as security—they wanted their money. I told him he could take Mr. Tilden's letter to any lawyer, and they would tell him that Mr. Tilden was liable to account for the full amount received from the property."

Mr. Tilden's deposition was received by consent. He testified:

"That it is correct, as stated by the defendant, that he owed the plaintiff, the Drovers' Deposit National Bank, upwards of $38,000 on account of his personal indebtedness and the indebtedness of M. Newgass & Son, of which firm he was a member; such indebtedness being over and above the amount of the liability of the defendant as a guarantor of the notes of Alfred J. Nicholson. That on or about the 13th day of January, 1911, defendant conveyed to deponent certain real property belonging to him in the state of Illinois which property is described in Plaintiff's Exhibit 2 of February 13, 1913. That on or about said 13th of January, 1911, deponent sent a letter, Plaintiff's Exhibit 2, at the request of the defendant, Newgass, and had the original sent in to the defendant, Newgass, who was at that time ill and stopping at the Annex Hotel in the city of Chicago. Deponent further says that the only understanding of any kind or character he ever had with the defendant, Newgass, with respect to the receipt of the property described in Plaintiff's Exhibit 2 is set forth in the writing, Plaintiff's Exhibit 2, and that he never had any other or different agreement with respect thereto. That when the defendant deeded this property to deponent, deponent did not say, directly or indirectly, that this cleaned up all the indebtedness of every kind which the plaintiff bank had against the defendant, nor was anything to that effect said by deponent directly or indirectly. * * * That deponent still has title to the property described in Plaintiff's Exhibit 2, and is holding the same pursuant to the terms of Plaintiff's Exhibit 2, and has caused defendant to be notified that if he would pay his indebtedness to the plaintiff, deponent would redeem to him the property described in Plaintiff's Exhibit 2."

There was also in evidence two letters from the defendant to Mr. Tilden dated May 3, 1912, and June 24, 1912, in reference to the institution of this suit against him, containing personal appeals, but in no way claiming release or payment, or referring to any such matter.

[3, 4] I am of the opinion that the alleged verbal release and discharge being an affirmative defense, the defendant did not sustain the burden. His story is in the highest degree improbable. It was positively contradicted by Mr. Tilden, who was corroborated by Mr. Adams as to the interview with the defendant. Mr. Tilden's account is supported by his contemporaneous letter, which described the lots with care and particularity, and stated the conditions upon which they were held. Said paper is really a declaration in trust.

In Hutchins v. Van Vechten, 140 N. Y. 115, 35 N. E. 446, the court said:

"By chapter 322 of the Laws of 1860 the Legislature restored the law to its original condition by an amendment to the seventh section, substantially providing that a declaration of trust in lands might be proved by any writing subscribed by the party declaring the same. It is not necessary now to procure a deed or a formal writing intended for the purpose in order to prove the trust, but letters or informal memoranda signed by the party, and even admissions in a pleading in another action between other parties, if signed by the party with knowledge of its contents, will satisfy the requirements of the statute, if they contain enough to show the nature, character, and extent of the trust interests."

Section 242 of the Real Property Law (chapter 50, Con. Laws, c. 52, Laws of 1909), providing for conveyances and deeds in writing provides:

"But this section does not * * * prevent any trust from arising or being extinguished by implication or operation of law, nor any declaration of trust from being proved by a writing subscribed by the person declaring the same."

The paper would clearly estop Mr. Tilden from denying that he held the property except upon the terms and conditions therein stated:

"A person, having voluntarily assumed the character of trustee, shall not be permitted to deny either as to his cotrustees or the cestui que trust that he held that character, or to disavow his acts done in that capacity." Basterly v. Barber, 65 N. Y. 262.

And if he should sell the property, the defendant could recover the surplus proceeds. Bork v. Martin, 132 N. Y. 280, 30 N. E. 584, 28 Am. St. Rep. 570.

The conveyances were of the nature of mortgages as security for the debt. The creditor may sue upon the debt irrespective of the security. The defense has not been made out by a preponderance of the evidence, and the judgment appealed from should be reversed, and a new trial ordered, with costs and disbursements to the appellant to abide the event. All concur.