Jacob J. Schwartzwald, J.
This is a motion for summary judgment in an action to recover the balance due on two bonds executed by religious corporations and upon the guarantees of payment of the same by the individual defendants.
The two congregations involved are Congregation Achpretvia Tal Chaim Shar Hayushor, Inc. (herein designated as Hayushor) and Congregation Rabbi Herschele Lisker (herein designated as Lisker). The individual defendants are Rabbi Solomon Fried-lander, the president of both corporations, and his three sons, two of whom are rabbis, and the defendant Morris Giloni, who is both an obligee and guarantor, and is the only one who has served an answer and opposes the motion. It is not alleged that Giloni was in any way connected with either corporation as an officer, trustee or member.
The present status of the action appears to be as follows: The individual defendants, except Giloni, defaulted in appearance and answer, and judgment was entered against them and the action severed as to them. The two congregations have likewise defaulted in appearance or answer, but the action as to them and Giloni is pending and continues. At the time of the commencement of the action the balance due was $10,753.50, but has since been reduced to $7,800.
The facts disclosed by the papers are as follows: On October 31, 1963, the defendant Hayushor executed, acknowledged and delivered a bond and mortgage in the sum of $20,000, wherein it agreed to pay on or about October 31, 1964, the plaintiff’s *494 deceased, Ms executors, successors and assigns the sum of $15,000 with interest at 6% and to the defendant Giloni the sum of $5,000, with interest. It is conceded that no order of the Supreme Court was obtained pursuant to section 12 of the Religious Corporations Law granting leave to mortgage the real property. On or about October 28, 1964, to induce plaintiff’s decedent to extend the expiration date, the individual defendants in consideration of the extension of the bond and mortgage from October 31,1964 to October 31, 1965, guaranteed payments to be made under the bond and mortgage and waived any rights by reason of the extension. On October 30, 1964, the plaintiff’s decedent assigned to one Hyman a $5,000 interest from his 75% undivided interest in the said bond and mortgage, and the plaintiff is the present owner of 50% of the unpaid balance. That at the time of the commencement of the action there was due the sum of $3,850 on this bond, that defendant Hayushor defaulted in payment, that the default was in effect for more than one year, and that the defendant Giloni as guarantor was notified of said default and refused to make payment.
The facts with respect to the Lisker bond and mortgage are slightly different. On September 30, 1965, Lisker executed, acknowledged and delivered a bond and mortgage in the sum of $14,000, which it agreed to pay on or about September 30,1966 to plaintiff’s deceased and Giloni and Hyman, and in which bond and mortgage the plaintiff’s deceased had a 50% interest, Giloni 25%, and Hyman 25%. On August 24, 1965, an order of the Supreme Court, Bronx County was made granting leave to Lisker pursuant to section 12 of the Religious Corporations Law to mortgage its real property. On September 30, 1965, in order to induce plaintiff’s decedent to make the loan, the four individual defendants executed a guarantee of payment of the bond and mortgage, and the defendant Giloni executed a guarantee of payment to plaintiff’s decedent and Hyman of the amounts due them on the bond and mortgage, and said guarantee further provided that it was to apply to any extension or modification of said mortgage and without notice.
The defendant Giloni in his answer sets up as a defense the failure of the two religious corporations to obtain an order pursuant to the afore-mentioned statute granting leave to mortgage the properties (Lisker did obtain such order), and further alleges on information and belief that the funds obtained by reason of the loans were diverted by the said defendants, except Gilorn, to their personal use, and that by reason of the aforesaid the bonds and mortgages were a nullity and the guarantees had no legal existence.
*495 Subdivision 1 of section 12 of the Religious Corporations Law provides: “ A religious corporation shall not sell, mortgage or lease for a term exceeding five years any of its real property without applying for and obtaining leave of the court therefor pursuant to the provisions of article five of the general corporation law
The object of the statute in requiring a religious corporation to obtain leave of the court to mortgage its property is to protect the religious purposes of the corporation and to prevent a dissipation and perversion of the corporate assets (Muck v. Hitchcock, 212 N. Y. 283, 287). Where leave of the court has not been obtained in accordance with the statutes, the mortgage is invalid (50 N. Y., Jur., Religious Societies, § 121; Matter of Beth Israel, 114 Misc. 582). Thus no action to foreclose the Hayushor mortgage was maintainable. A nunc pro tunc order might have been obtained under subdivision 9 of section 12 of said statute (Yancey v. New Chapel Baptist Church, 307 N. Y. 858), which would have validated the mortgage, but this was not done.
The plaintiff has not elected to foreclose either mortgage but has proceeded by this action on the bonds to recover the loans. The bond is the primary debt and the mortgage is security for the debt. Even though the security is voidable, the indebtedness on the bond remains unaffected and is enforcible (Cass v. Realty Securities Co., 148 App. Div. 96, affd. 206 N. Y. 649). A creditor may sue upon a debt irrespective of the security (Drovers Deposit Nat. Bank v. Newgass, 161 App. Div. 769). It is well settled that an action may be brought upon a bond secured by a mortgage without reference to the mortgage (Kress v. Central Trust Co., 246 App. Div. 76, affd. 272 N. Y. 629; General Inv. Co. v. Interborough R. T. Co., 200 App. Div. 794, affd. 235 N. Y. 133).
The plaintiff is proceeding upon the theory of a contract liability. Neither section 5 nor section 12 of the Religious Corporations Law requirés a religious corporation to obtain judicial approval as a condition to borrow money. A religious corporation is liable on its contracts the same as any other corporation. However, neither the trustees nor the other officers of a religious corporation have separate individual authority to bind the corporation to a contract; the collective action by the board as a board of trustees is necessary (Matter of Congregation Anshe Kesser v. Jewish Community Center, 5 A D 2d 1011, 1012; People’s Bank v. St. Anthony’s R. C. Church, 109 N. Y. 512; Parucki v. Polish Nat. C. C., 114 Misc. 6). There must be authorization to make the loan and execute the bond, or ratification of the same. When supported by evidentiary facts, *496 authorization or ratification arc matters for determination at the trial (Bartlett v. Mt. Zion Baptist Church of Port Chester, 280 App. Div. 798). In that case (see record on appeal) the pastor of the church stated in his affidavit that as the chief spiritual officer, he knew of his own personal knowledge that no corporate meeting was ever held to pass upon or approve the issuance of the note. The doctrine of ratification is as applicable to a religious corporation as to any civil corporation (50 N. Y. Jur., Religious Societies, § 128).
A corporate acknowledgement was on each of the bonds sued upon. The purpose of an acknowledgement is to take the place of proof of due execution (Richardson, Evidence [9th ed.], § 643). The certificate of acknowledgement is prima facie proof of the proper execution of the instrument (CPLR 4538). It should be overthrown only on proof so clear and convincing as to amount to a moral certainty (Albany County Sav. Bank v. McCarty, 149 N. Y. 71, 80). In that case it was stated (p. 83): “ We think, as between the parties, a certificate of acknowledgement, when read in evidence, makes out a prima facie case as strong as if the facts certified had been duly sworn to in open court by a witness, apparently disinterested and worthy of belief.” (See, also, Rock v. Rock, 195 App. Div. 59; Matter of Goodman, 2 A D 2d 558, 562; Richardson, Evidence [9th ed.], § 645.)
The certificates of acknowledgement expressly stated: “ that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed h[is] name thereto by like order.” The board of directors is the equivalent of the board of trustees of a religious corporation. It was incumbent upon the defendant G-iloni to submit evidentiary facts rebutting the prima facie showing of authorization and demonstrating the existence of a triable issue of the ultimate fact (CPLR 3212, subd. [b]; Shapiro v. Health Ins. Plan, 7 N Y 2d 56, 63). The burden upon a party opposing a motion for summary judgment is not met merely by a repetition of the allegations contained in the pleadings (Indig v. Finkelstein, 23 N Y 2d 728). The opposing affidavit states: “ The question has now arisen as to what the rabbi and his sons did with the monies ’ ’, but no facts are set forth upon which to predicate the question. And further, ‘ ‘ It has become patent that the monies were diverted from some purpose other than the synagogues ”, but again no evidentiary facts are averred to support the assertion. Mere conclusions are insufficient. Facts, not insinuations, must be averred to raise the issue that these individual defendants diverted the funds borrowed to their *497 personal use. If the defendant Griloni knows otherwise, he should have so stated. Hence no triable issue has been raised.
Upon the facts and circumstances the doctrine of estoppel is applicable to the defendant Griloni. He was a party to all transactions and participated in the creation of the bonds by lending part of the moneys in each instance. He could not, as an obligee, urge that the instruments were valid so long as payments were being made, and then when default occurs, as a guarantor, contend that the instruments and guarantees were invalid. His contention that by so doing his own investment is being destroyed does not help him. The stratagem promotes injustice and is designed to defeat the rights of the plaintiff.
In cases involving a guarantee, the intention of the parties is important. It is clear from the documents that the purpose of the guarantee was to insure payment to plaintiff’s decedent, otherwise the decedent would not have agreed to an extension. Griloni is clearly liable on the guarantees, one of which was executed a year after the bond. A guarantor cannot raise the defense of incapacity of the principal to avoid his liability as surety (President & Fellows of Harvard Coll. v. Kempner, 131 App. Div. 848; Severson v. Macomber, 153 App. Div. 482, affd. 212 N. Y. 274).
In view of the disposition made by the court, it is unnecessary to pass upon the questions as to whether the surety when sued together with the principal may raise any defense available to the principal under the doctrine of Aeschlimann v. Presbyterian Hosp., 165 N. Y. 296) or whether the defense would in effect be an independent cause of action for cancellation or rescission which only the principal may assert in what it deems to be its best interest (Walcutt v. Clevite Corp., 13 N Y 2d 48, 55). A religious corporation may not unjustly enrich itself (Wilson v. Ebenezer Baptist Church, 17 Misc 2d 607). Accordingly, the motion for summary judgment is granted.