■ LYNDA H. BERLIN, Respondent, v NEW HOPE HOLINESS CHURCH OF GOD, INC., et al., Appellants, et al., Defendant. — In a foreclosure action, the appeal is from an order of the Supreme Court, Westchester County (Coppola, J.), dated January 14, 1982, which denied appellants' motion to, *inter alia,* vacate a default judgment entered against them. Order affirmed, with $50 costs and disbursements. We note at the outset that appellants have utterly failed to proffer any excuse for their default in answering the complaint. The defendant mortgagor was personally served with the summons and complaint on June 2, 1981. On July 6, 1981 a notice, pursuant to CPLR 308, together with an additional copy of the summons and complaint and affidavit of service of the original process, were mailed to the defendant mortgagor. Judgment of foreclosure and sale was granted on August 25, 1981. It was not until September 23, 1981 that the defendant mortgagor, then in default for a period of over 90 days, sought to vacate the judgment of foreclosure. In a motion to vacate a default judgment under CPLR 5015 (subd [a], par 1), a movant is required to demonstrate both a valid excuse for a default and a meritorious defense to the underlying action (*Eaton v Equitable Life Assur. Soc. of U. S.,* 56 NY2d 900; *Q.P.I. Rests. v Slevin,* 58 NY2d 769, revg 88 AD2d 844; *Barasch v Micucci,* 49 NY2d 594; *Bruno v Village of Port Chester,* 77 AD2d 580, app dsmd 51 NY2d 769; *Meyer v Parr Co. of Suffolk,* 50 AD2d 927). Since no valid excuse for such default has been forthcoming, Special Term properly exercised its discretion in denying the appellants' motion, *inter alia,* to vacate the default judgment. We therefore do not reach the merits of the appellants' defense to the action. Nonetheless, we believe it is necessary to correct Special Term in its interpretation of the law. Subdivision 1 of section 12 of the Religious Corporations Law requires a religious corporation to apply for and obtain the court's permission in order to mortgage any of its property (see *Bernstein v Friedlander,* 58 Misc 2d 492; cf. *Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, of Brooklyn,* 76 AD2d 712, affd 54 NY2d 742). Contrary to Special Term's interpretation, the duration of the mortgage does not affect this requirement. Further, we do not determine whether the original mortgage was within the purview of section 12 of the Religious Corporations Law. Titone, J. P., Bracken and Niehoff, JJ., concur.

Rubin, J., dissents and votes to reverse the order and grant the appellants' motion to the extent of vacating the judgment of foreclosure and sale, with a memorandum, in which Boyers, J., concurs. At the outset it should be stated that I am in full agreement with the majority that the apparent basis for Special Term's decision is erroneous. Insofar as pertinent, subdivision 1 of section 12 of the Religious Corporations Law provides that: "A religious corporation shall not sell, mortgage or lease for a term exceeding five years any of its real property without applying for and obtaining leave of the court therefor pursuant to section five hundred eleven of the not-for-profit corporation law * * * except that a religious corporation may execute a purchase money mortgage * * * without obtaining leave of the court therefor." Special Term held that "[t]he mortgages in question did not require court approval pursuant to Section 12 of the Religious Corporations Law since the terms thereof did not exceed 5 years". However, subdivision 1 of section 12, prior to its 1953 amendment (L 1953, ch 722, eff April 14, 1953), required only that a

religious corporation "shall not sell or mortgage any of its real property" without first applying for and obtaining court approval. By the 1953 amendment, a "lease for a term exceeding five years" without such court approval was also prohibited. Although the Legislature could have avoided ambiguity by placing punctuation before and after the clause containing the amendment, the amendment, by adding the words "exceeding five years", was intended to refer solely to the word "lease" added simultaneously therewith, and not to change the statute by application of the five-year period to mortgages. The reason for the distinction is obvious. By a sale or mortgage of its real property, the religious body stands to lose its house of worship and court approval for the protection of the congregation is a statutory safeguard. For the same reason, such consent is required for a lease exceeding five years. But a lease for a lesser term is only a loss of use for a limited duration. Thus, clearly, the length of the term of the mortgage does not affect the mandatory requirement that a religious corporation must first obtain judicial approval to validly mortgage its property. I am also of the opinion that Special Term should have vacated the judgment of foreclosure and sale and permitted the appellants to interpose an answer. The majority never reaches the merits of the controversy and simply finds that since the appellants failed to show a valid excuse for their default, their counsel is guilty of law office failure (*Barasch v Micucci,* 49 NY2d 594) and, therefore, the plaintiff should be permitted to foreclose a mortgage which the appellants allege is void. I am not persuaded that the appellants have not shown a valid excuse for their default. In the affidavits of Jesse J. Radcliff and James L. Radcliff in support of the appellants' motion, *inter alia,* to vacate the judgment of foreclosure and sale and the memorandum of law submitted therewith to Special Term, they point to their confusion and to the alleged conflict of interest generated by the fact that the action against them by the plaintiff was brought by the very attorneys who had represented them in the preparation and execution of the deed, the bond and mortgage, and the negotiations for the loan underlying the latter, all of which are the gravamen of the subject mortgage foreclosure action. The alleged conflict was not denied by an affidavit of plaintiff's attorneys, nor was it answered in the affidavit or the memorandum of law in opposition to the appellants' motion to open the default. This is an action in equity involving a religious corporation, one of a class of litigants that the Legislature has determined to be entitled to special safeguards (Religious Corporations Law, § 12; Not-For-Profit Corporation Law, § 511; *Muck v Hitchcock,* 149 App Div 323, revd on other grounds 212 NY 283; *Russian Church of Lady of Kazan v Dunkel,* 67 Misc 2d 1032, affd 41 AD2d 746, affd 33 NY2d 456), similar to those granted certain individuals such as infants, incompetents and others under disability. To summarily deprive a party of its day in court by the application of the harsh rule of *Barasch v Micucci (supra)* is, in my view, completely unwarranted where invoked against those whom the Legislature has cloaked with it protection. The underlying facts leading to this foreclosure action do not appear to be in dispute. Sometime prior to December 29, 1975, one Jesse Radcliff and his wife were desirous of deeding certain real property they owned to a church of which Mr. Radcliff was the pastor. They consulted with a law firm, which now represents the plaintiff herein, and that firm handled the real estate transaction for them. The deed was executed on December 29, 1975, and the grantee was New Hope Holiness Church of God, Inc., denominated as "a religious corporation", albeit the church was not then legally incorporated. At this time Jesse Radcliff apparently informed the law firm that the church was seeking a source of funds to build a church building on the property and said attorneys made arrangements for the church to obtain two loans of $25,000 each from plaintiff Lynda H.

Berlin, who is the wife of one of the law partners. The consideration for the two loans were two mortgages on the church property, one dated January 8, 1976, and the other dated March 30, 1976. In each case the mortgagor was denominated "New Hope Holiness Church of God, Inc., a religious corporation", which was then, as previously stated, a nonexistent legal corporation. A short time later, said attorneys discovered that the church had never actually been incorporated and they, therefore, on July 13, 1976, prepared the necessary papers, and had the church incorporated with the same name. Immediately thereafter they prepared another deed which the Radcliffs executed on July 26, 1976, again conveying the property, this time to the newly incorporated church, said deed specifically reciting that it was "given in lieu of a deed dated December 29, 1975, recorded * * * before the incorporation of the Church". On the very same day the church executed two more mortgages and notes in lieu of those executed in January and March, 1976, again specifically reciting therein that said newly executed notes and mortgages were "to correct any defect" in the prior notes and mortgages "given before the incorporation of the Church". The judgment of foreclosure and sale which is the subject of this appeal involves neither of these *re-executed* mortgages (which apparently were not refiled) but relates to the mortgage that was *initially* executed on March 30, 1976, when the denominated religious corporation had no legal existence as such. The status of the attorneys who now represent the plaintiff in this matter, but who had prepared and supervised the execution of the deed on behalf of the appellants, and then the bond and mortgage which is the subject of this foreclosure action, is questionable. Regardless of what they now contend, it is crystal clear that once the plaintiff, apparently a nominee of the law firm, agreed to lend money to the church, through the negotiations of said attorneys for and on behalf of the church, that law firm had a divided fidelity to the plaintiff, as well as to the church and the individual defendant. That being so, said attorneys had an obligation to the appellants to make their position clear and to recommend that other counsel might be consulted because of the possible conflict of interest. Obviously, they did not do so, and the question arises as to whether the various proceedings, subsequent to the loans, were ostensibly being done on behalf of the appellants, or for the benefit of the plaintiff, or for all the parties. Certainly the incorporation of the church in an effort to validate the two bonds and mortgages executed prior thereto, which said attorneys apparently recognized as invalid since the corporation had no legal existence, was for the benefit of the plaintiff. This possible conflict of interest, and the confusion resulting therefrom as to what party or parties plaintiff's attorneys were representing in these transactions, and at what stage said attorneys ceased to represent appellants' interest and solely represented the plaintiff, was raised at Special Term as an excusable default pursuant to CPLR 5015. That court, by its determination that the appellants did not demonstrate a meritorious defense, implicitly found that they had satisfactorily shown a justifiable excuse for their default, otherwise it would not have reached the issue and merits of such defense. For the latter reason, inadvisedly, the excusable default issue was not argued by the appellants on this appeal, they being content to rest solely on the meritorious defense issue, apparently lulled into the belief that Special Term had found, as they had contended, that "[d]efendants in their moving papers have indeed shown that the default is excusable and even justifiable". In any event, if Special Term had denied appellants' motion, *inter alia,* to open their default for failure to show an excusable default under the rule of *Barasch v Micucci* (49 NY2d 594, *supra*) or CPLR 5015, such denial would have been an abuse of discretion. The harsh rule of *Barasch* is intended to curb professional laxity, and not to penalize the

lay public. Here, this foreclosure action was commenced by the service of the summons and complaint on June 2, 1981. Defendants failed to appear or answer and a CPLR 308 notice was served on July 6, 1981. On August 25, 1981, the judgment of foreclosure and sale was entered. Sale of the premises was then scheduled for public auction on September 23, 1981. However, on the prior day, September 22, 1981, the defendant church filed a voluntary petition in.bankruptcy in the United States District Court, Southern District of New York, and thus the foreclosure sale of the subject church premises, scheduled for the following day, was automatically stayed. Then, by order to show cause dated September 23, 1981, the date originally set for the sale which was now stayed, the appellants brought on the present motion, *inter alia,* to open their default, and to vacate and set aside the mortgage and the judgment of foreclosure and sale. This motion was returnable October 8, 1981, and was adjourned by the parties to November 4, 1981. On January 14, 1982 Special Term denied said motion, and on May 14, 1982, the automatic stay in the bankruptcy proceeding was vacated. The affidavit of appellants' attorney in support of said motion did not indicate when his firm was retained to represent the appellants in this action, nor does the record reflect it. Presumably, however, the firm was retained after the judgment of foreclosure and sale entered on August 25, 1981, and *before* the foreclosure sale scheduled for September 23, 1981, because the order to show cause, *inter alia,* to open the default was dated the latter date. Thus, within approximately five weeks of being retained, and *before* the property was sold at public auction, appellants' new counsel moved expeditiously to vacate the default. Any additional delay, prior thereto, of approximately two months, measured from the commencement of the action until the judgment of foreclosure and sale is attributable to the appellants' nonrepresentation by counsel, probably stemming, as indicated above, from their confusion as to their former attorneys' present role of now representing the plaintiff in this action. Under these particular circumstances, the comparatively short duration of the delay in affirmatively moving to open the default was excusable even under *Barasch,* and well within the one-year requirement of CPLR 5015. By reason of the foregoing, I believe that the appellants have adequately demonstrated an excusable and justifiable default. Turning now to the critical issue as to whether the appellants have made an adequate showing of a meritorious defense, they contend that the corporate mortgages executed by the church *before* it was legally incorporated, and re-executed thereafter, were and are void, because the approval of the court was not obtained prior thereto, nor alternatively, confirmed by the court after incorporation, as required by section 12 of the Religious Corporations Law, to validate said mortgages. Indisputably, in the deed from Jesse Radcliff and his wife to New Hope Holiness Church of God, Inc., dated December 29, 1975, the church is denominated "a religious corporation". Furthermore, the mortgage and note in the sum of $25,000, both dated January 8, 1976, respectively, describe New Hope Holiness Church as a "religious corporation". Additionally, both said note and mortgage contain corporate acknowledgments and seals wherein the New Hope Holiness Church is described as a "religious corporation" which "executed the foregoing instrument". The subsequent additional loan of $25,000 to the church evidenced by the mortgage and note dated March 30, 1976, similarly described the church as a "religious corporation" and contain corporate acknowledgments and seals of "religious corporation". Concededly, when these documents were executed by New Hope Holiness Church despite its specific designation as a religious corporation, it had no legal corporate existence, and no prior colorable attempt had been made to incorporate it. Thus, without corporate existence either *de jure* or *de facto,* it could not

do any act whatsoever as a legal entity. It could not "take title to real or to personal property * * * acquire rights by contract or otherwise, incur debts or other liabilities either in contract or tort, sue or be sued" (*Kiamesha Dev. Corp. v Guild Props.,* 4 NY2d 378, 389; 13 NY Jur 2d, Business Relationships, § 67, p 339). As a nonexistent entity incapable of acquiring any rights, it could not transfer any rights — its acts being void (see *Kiamesha Dev. Corp. v Guild Props., supra,* pp 388-389; *Wilson v Ebenezer Baptist Church,* 17 Misc 2d 607, 609; cf. *Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, of Brooklyn,* 54 NY2d 742, 744; *Bernstein v Friedlander,* 58 Misc 2d 492, 495; 5A Warren's Weed, New York Real Property, Title Examination, § 7.17). Plaintiff's attorneys, aware of this predicament, in order to salvage the two "corporate" loans and mortgages, legally incorporated the church on July 13, 1976, with the identical name. Apparently, at their behest, the Radcliffs reconveyed their property to the newly incorporated church on July 26, 1976, reciting therein that it was in lieu of the prior deed of December 29, 1975. Also, on the same day, the church re-executed the two notes and mortgages, and recited therein that they were in lieu of the notes and mortgages executed in January and March, 1976, respectively. However, plaintiff made no attempt to validate said re-executed mortgages pursuant to subdivision 9 of section 12 of the Religious Corporations Law, which authorizes the Supreme Court to grant a confirmatory order where a religious corporation executes a mortgage of its real property without the prior consent of said court. Plaintiff now contends that section 12 of the Religious Corporations Law, which requires such prior approval, is inapplicable since it specifically relates to a religious corporation, and not to an unincorporated church or religious association such as the New Hope Holiness Church of God was by reason of its lack of incorporation. This contention is without merit and of no avail to plaintiff. An unincorporated religious society or church falls within the rule that unincorporated associations are not regarded as legal entities, since they are artificial persons and have no existence separate and apart from their members (50 NY Jur, Religious Societies, § 110, p 10; Religious Corporations Law, § 2). Thus, in the absence of statutory authorization, they are incapable of taking or holding either real or personal property in the association name, either by way of gift or purchase (6 NY Jur 2d, Associations and Clubs, § 6, p 329). "Nor can it take or accept such property by devise or bequest. Property ostensibly held by such an association is deemed to belong jointly to the members. However, as provided by the Estates, Powers, and Trusts Law [EPTL 8-1.1], a gift to an unincorporated association may be saved where the circumstances clearly indicate, by express words or necessary implication, that the gift is to be used for religious, educational, charitable or benevolent uses" (6 NY Jur 2d, Associations and Clubs, § 6, pp 329-330). It is significant, however, that even if such religious society lawfully acquires property pursuant to EPTL 8-1.1, it cannot thereafter "sell, mortgage or lease" any such real property without the approval of the "supreme court or the surrogate's court" (EPTL 8-1.1, subd [g]). Plaintiff further contends that statutory authorization exists in sections 420-a (formerly § 421) and 436 of the Real Property Tax Law for an unincorporated religious society to own real property. Those sections relate to tax exemptions for nonprofit organizations. Contrary to plaintiff's argument, these sections were not intended to sanction or authorize the manner in which title to real property may be held by a church. Their apparent purpose is to assure that real property devoted solely to church purposes is granted tax exemption irrespective of whether title is vested in an incorporated church, or colorably held by an unincorporated church (cf. *Matter of Yancey* [*New Chapel Baptist Church*], 307 NY 858) or, whether title is held by a clergyman or a minister in trust for

the benefit of the members of an incorporated or unincorporated church (Real Property Tax Law, § 436; *Matter of Kimberly,* 27 App Div 470, 475). In any event these arguments, advanced in anticipation of the affirmative defenses in a proposed answer, are meritless because the complaint does not allege that title to the realty was vested in an unincorporated religious society and that said body executed the mortgages. On the contrary, the verified complaint specifically alleges that the defendant church was a domestic corporation authorized to do business in the State of New York and that it executed said mortgages. In fact, while it does allege that the church was incorporated subsequent to the execution of said mortgages, it does not further allege that thereafter, in an attempt to validate said mortgages, the property was reconveyed to the incorporated church and the prior mortgages were re-executed by it. Nor can plaintiff assert that the property was lawfully acquired as a charitable gift to an unincorporated religious association under EPTL 8-1.1, as there is likewise no such averment. Even assuming, *arguendo,* that the church held colorable title as an unincorporated association, plaintiff's position is not supported, as claimed, by section 403 of the Not-For-Profit Corporation Law or section 4 of the Religious Corporations Law. Section 403 of the Not-For-Profit Corporation Law provides that upon incorporation of an "unincorporated association or group, the members of such association or group shall be members of the corporation so created, and all property owned by or held for it shall belong to and vest in the corporation, *subject to all existing encumbrances* and claims as if incorporation had not taken place" (emphasis added). Section 4 of the Religious Corporations Law similarly provides that upon incorporation, automatically, "All the temporalities and property of an unincorporated church, or of any unincorporated religious society, body, association or congregation, shall * * * become the temporalities and property of such corporation, whether such temporalities or property be given, granted or devised directly to such unincorporated church * * * or to any other person for the use and benefit thereof." Plaintiff, relying on these sections, contends that "[s]ince the mortgages were already in place at the time the church was incorporated, Section 12 of the Religious Corporations Law [requiring prior court approval to mortgage church property] did not apply". This argument begs the issue of the validity of existing encumbrances on property so transferred from the unincorporated association to the incorporated church. Surely, it would be contrary to the intent and spirit of these sections to saddle a newly incorporated church with an invalid mortgage or encumbrance. If the rule were otherwise, a religious association could circumvent the command of the plainly worded provisions of subdivision 1 of section 12 of the Religious Corporations Law, requiring the incorporation of the church and the prior consent of the Supreme Court before the church's real property can be mortgaged. By the simple stratagem of illegally placing a mortgage lien on the property, such lien could then be validated automatically under these sections by incorporation. The object of section 12 is "to protect the society and its members from loss through unwise bargains, and to prevent perversion of the association's property" (*Muck v Hitchcock,* 212 NY 283, 287, *supra*). Acceptance of plaintiff's contention would nullify this safeguard. Since a religious society is an amorphous group, it is noteworthy that none of the relevant statutes empowers such unincorporated congregation to "sell, mortgage or lease" real property without prior court approval. Only by incorporation can such rights be exercised under the protection of subdivision 1 of section 12 of the Religious Corporations Law. Even if the real property is held in a charitable trust for the benefit of an unincorporated religious society, said property, likewise, cannot be "sold, mortgaged or leased", without the prior authorization of the Supreme Court or

Surrogate's Court, as the case may be (EPTL 8-1.1, subd [g]). The law is settled that no way was open to plaintiff to validate the two mortgages, including the one *sub judice,* executed by the church prior to its incorporation, not even by a *nunc pro tunc* application for confirmation pursuant to subdivision 1 of section 12 of the Religious Corporations Law subsequent thereto. The benefit of that statute inures only to a mortgage executed by a corporation. That was made clear by the Court of Appeals in the case of *Matter of Yancey (New Chapel Baptist Church)* (307 NY 858, *supra)* where there was a fact pattern very similar to the one at bar. There, certain individuals deeded property to what purported to be a religious corporation but was, in fact, concededly, an unincorporated religious association. Thereafter the minister and trustees of the church executed a mortgage that was assigned to the plaintiff. Still later, the church was incorporated. Four years after the incorporation, the plaintiff sought a judgment of foreclosure against the church and, in the alternative, personal judgment against the individual defendants. The trial court dismissed the complaint insofar as it sought foreclosure on the grounds that *the corporation was not in existence* at the time the mortgage was executed, as well as on the further ground that the mortgage had not been executed with the consent of the Supreme Court. Judgment was rendered in favor of the plaintiff against the individual defendants on the bond. Plaintiff took no appeal from this judgment but instead brought on a proceeding pursuant to subdivision 9 of section 12 of the Religious Corporations Law, seeking Supreme Court confirmation and validation of the mortgage. The application was granted and that determination was affirmed (281 App Div 687). The Court of Appeals unanimously reversed and dismissed the petition. The court said, in pertinent part (p 860): "the Supreme Court was without power, either under subdivision 9 of section 12 of the Religious Corporations Law, or under section 113 of the Real Property Law [now EPTL 8-1.1], to grant the order appealed from. Said order is invalid, since, by statutory exception, subdivision 9 of section 12 of the Religious Corporations Law permits *nunc pro tunc* validation of mortgages executed by incorporated religious associations only; in other cases, the general principles governing *nunc pro tunc* orders apply". Clearly, then, there was, and is, no way that either of the first two mortgages can now be validated. It follows that since the subject mortgage was void, any attempt to foreclose it is a nullity. As was said in *Bernstein v Friedlander* (58 Misc 2d 492, 495): "Where leave of the court has not been obtained in accordance with the statutes, the mortgage is invalid (50 N. Y. Jur., Religious Societies, § 121; *Matter of Beth Israel,* 114 Misc. 582). Thus no action to foreclose the Hayushor mortgage was maintainable" (see, also, *Church of God of Prospect Plaza v Fourth Church of Christ, Scientist, of Brooklyn,* 54 NY2d 742, 745, *supra; Wilson v Ebenezer Baptist Church,* 17 Misc 2d 607, 609, *supra).* For the same reason, no ratification of the void mortgage occurred by the monthly payment of interest on the overdue principal, as claimed by plaintiff, since ratification could only legally take place by resorting to the statutory procedure of a confirmatory order pursuant to subdivision 9 of section 12 of the Religious Corporations Law *(Matter of Yancey [New Chapel Baptist Church], supra).* This does not mean that plaintiff is left without a remedy. If the appellants successfully interpose their defenses, and the foreclosure complaint is dismissed, plaintiff may then make application to the court pursuant to subdivision 9 of section 12 to confirm the mortgages re-executed *after* the church was incorporated. If such confirmation is obtained, she may then bring an appropriate foreclosure action. By this means, all parties will have their day in court and the controversy can be determined on the merits. The order of the Supreme Court, Westchester County, dated January 14, 1982, should be reversed, the

motion insofar as it was to vacate the judgment of foreclosure and sale dated August 25, 1981, granted, and the appellants permitted to interpose an answer to the complaint.